## In Re BOARD OF COMMISSIONERS OF TUBERCULOSIS HOSPITAL DISTRICT OF BUCHANAN COUNTY, Appellant, v. JAMES J. PETER.

**In Banc, December 24, 1913.**

1. **CONSTITUTIONALITY OF STATUTE: Presumption: Attitude of Courts.** Courts, out of a solemn respect to the lawmaker, never impute to him an intention to circumvent, abrogate or impair a constitutional provision; hence they approach the question of the constitutionality of a statute with great caution, view it from all angles and from all its aspects, giving free play to a strong (even violent) presumption in favor of its validity, and never declare it void unless its invalidity is, in their judgment, placed beyond a reasonable doubt; and, hence, every benign rule of construction is allowed and astutely levied upon and exercised in so interpreting the statute, if possible in reason, that none of its parts perish. But if, when all is done for it that can be done in reason, it appears that there cannot be any two ways about it but that the statute is in violation of the Constitution, it will be declared void.

2. ————: **Power to Declare Legislative Act Unconstitutional Lodged in Courts.** To declare a statute unconstitutional is the exercise of a high and delicate, but necessary, judicial power, to be fearlessly used if need calls and there is no way out of it. In no other way known to intelligent men can a government by written constitution exist except there be power somewhere to make statutes square with that instrument, and to say whether or not they do. That high power is now lodged with the courts, there it has been for generations and there it must remain until the people by the exercise of their sovereign will, expressed in a constitutional way, take it away and lodge it elsewhere.

3. ————: **Affection for Its Benign Purpose.** Judges must labor to make a covenant with themselves that affection for the benign purposes of a statute and sympathy for those whose affliction it was designed to alleviate or cure, do not press upon judgment and lead them away from the paths of cold reason.

4. ————: **Tuberculosis Act: Public Purpose.** The Act of 1913, authorizing a levy of a tax of twenty-five cents on the hundred dollars valuation of all property in a county for the maintenance of a tuberculosis hospital, is not violative of that part

of the Constitution (Sec. 3, art. 10) declaring that "taxes may be levied and collected for public purposes only." The tax is for a public purpose.

5. ————: Levied by Hospital District. The Act of 1911 in so far as it granted to the board· of commissioners of a tuberculosis hospital district the power to levy taxes on all property in a county for the erection and maintenance of a hospital was a palpable violation of the provision in the Constitution (Sec. 1, art. 10) declaring that "the taxing power may be exercised by the General Assembly for State purposes, and by counties and other municipal corporations, under authority granted to them by the General Assembly, for State purposes, and by counties and other municipal corporations, under authority granted to them by the General Assembly, for county and other corporate purposes." The hospital district is not a municipal corporation.

6. TAXATION: Meaning of Levy. The word "levy" expresses a concept inseparably and intrinsically connected with the taxing power; but where the same act declaring that a hospital board may levy a tax in a given amount also requires the avouchment of the county court and a levy by that body as a condition precedent to the consummation of a legal tax levy, the act will be interpreted to mean that the court must make the levy, and the word "levy" used in connection with the board construed to require a mere preliminary order or requisition evidencing the official action of the board upon the amount of levy necessary for hospital purposes.

7. ————: Corporate Purposes: May Mean County Purposes: Hospital. The words "corporate purposes" used in section 1 of article 10 of the Constitution, declaring that "the taxing power may be exercised . . . by counties and other municipal corporations, under authority granted to them by the General Assembly, for county and other corporate purposes" are a broad term and are to be broadly construed; and the court declines to say that they do not mean a county purpose or a city purpose, as the case may be, and also declines to say that a statutory scheme involving the prevention and cure of infectious diseases imperiously menacing the public health, and the care of those afflicted therewith, who are indigent, at public expense, in the same public hospital with those who can and are required to pay, is not such an essential part of the public welfare as would become a "corporate purpose," that is, a county purpose, within the fair intendment of this broad constitutional term. But it does hold that unless an act which authorizes the board of such a public hospital to levy a tax upon all the property in the county for its maintenance contemplates a corporate or county purpose, it has no constitutional warrant whatever.

8. ————: **Usual County Purposes.** Roads, bridges, the care of paupers, prisoners and the insane, official salaries, the care of public buildings, etc., have usually been considered county purposes within the purview of the revenue laws and the administrative details of county business.

9. **CONSTITUTIONAL STATUTE: County Tuberculosis Hospital Act: Requisition of Tax to Be Vised by Prosecuting Attorney and Circuit Court.** The provision of the Act of 1913 relating to the establishing and maintenance of a county tuberculosis hospital requiring the amount of tax designated by the board as necessary to be levied, to be first approved by the prosecuting attorney and circuit court, is not such a limitation upon the taxing power as renders it invalid, or such a legislative anomaly as stamps upon it a doubt in the lawmaker's mind as to its validity, for a similar restriction has been carried forward as live law in some of the sections of the chapter on "Taxation and Revenue" in the Revised Statutes since 1879.

10. ·————: ————: **Not Violative of Section 1 of Article 10.** The County Tuberculosis Hospital Act of 1913 is not violative of section 1 of article 10 of the Constitution standing alone—which declares that "the taxing power may be exercised . . . by counties and other municipal corporations, under authority granted them by the General Assembly, for county and other corporate purposes."

11. ————: ————: ————: **Cannot Stand Alone.** But section 1 of article 10 must be read in connection with section 11 of article 10, declaring that the rate of taxes for county purposes cannot exceed thirty-five cents on the hundred dollars valuation in counties having thirty million dollars or more of assessed valuation of property, for both sections pertain to the same subject-matter and are strictly *in pari materia*.

12. ————: ————: **Tax in Excess of Thirty-five Cents for County Purposes: Invalid.** The purpose and intent of the County Tuberculosis Hospital Act of 1913 was to authorize a tax of twenty-five cents on the hundred dollars valuation in excess of the constitutional maximum limit of thirty-five cents in counties having property of an assessed valuation of thirty millions or more for roads, bridges, the care of the insane, paupers and criminals, care of public buildings, jury service, official salaries and other current county expenses, for if the constitutional levy of thirty-five cents is to be depleted by a deduction of twenty-five cents for a tuberculosis hospital district all the usual and needful activities of the county would be fatally crippled; and the act in that particular is violative of the Constitution and void.

13. ————: ————: ————: **Constitutional Barriers.** The provision of the Constitution fixing a maximum limit for county

purposes of thirty-five cents on the hundred dollars of as-
sessed valuation in counties having thirty million dollars or
more of assessed property, cannot be struck down by the
General Assembly, nor ignored, nor evaded by indirection. It
is an insurmountable barrier to an increase of taxes for county
purposes beyond that rate; and unless the tax on all the
property in the county to maintain a county tuberculosis hos-
pital can be construed to be for "corporate purposes," which
are construed to be equivalent to county purposes, it has no
constitutional warrant whatever.

14. ———: ———: **Not to be Upheld as Benefit Assessment.**
A tax of twenty-five cents on the hundred dollars of assessed
value on all property in the county to maintain a tuberculosis
hospital cannot be upheld on the principle by which benefit
assessments for parks, streets, levee and drainage purposes are
justified as legal. Those assessments, while referable to the
taxing power, are not taxes in a constitutional sense.

Appeal from Buchanan Circuit Court.—*Hon. William
D. Rusk,* Judge.

AFFIRMED.

*Corry C. Ferrell, C. F. Strop* and *Culver & Phillip* for appellant.

(1) The artificial being created by this act is not,
strictly speaking, a public or municipal corporation,
but is a quasi-public corporation. 20 Am. & Eng. Ency.
Law, 1130; 28 Cyc. 128; 1 Dillon, Mun. Corp. (4 Ed.),
secs. 22-25. In a number of cases in this State a county
has been termed a quasi-public corporation. Pundman
v. St. Charles Co., 110 Mo. 596; Jefferson County v.
St. Louis County, 113 Mo. 630; Redd v. Howell Co.,
125 Mo. 60; State ex rel. v. County Court, 142 Mo. 583.
In other cases the distinction referred to has been fair-
ly presented and clearly defined by this court. Heller
v. Stremmel, 52 Mo. 309; State ex rel. v. Leffingwell, 54
Mo. 471; St. Louis v. Shields, 62 Mo. 247. The charac-
ter of the corporation created is of consequence in con-
sidering the powers of the Legislature, the manner and
means by which it can act or has acted, and the rela-

tion such a corporation bears to our Constitution and laws. (2) The power resides in the Legislature to create public or quasi-public corporations, and is unrestricted unless limited by a constitutional provision. 1 Dillon, Mun. Corp. (4 Ed.), sec. 37; 28 Cyc. 135; 20 Am. & Eng. Ency. Law, p. 1132; Taylor v. Carondelet, 22 Mo. 105. Our Constitution in no way abridges the right of the Legislature to create corporations of this character. The provisions of article 12 relate to private corporations only, or joint stock companies or associations having "powers or privileges not possessed by individuals or partnerships." Sec. 11, art. 12. The Legislature is required to "provide by general laws for the organization and classification of cities and towns." Sec. 7, art. 9, and Sec. 53, art. 4. The terms "municipality," "political corporation," "subdivision of the State," "municipal subdivision of this State," and "municipal corporations" are used interchangeably in the various provisions of our Constitution. Art. 4, sec. 47; Art. 9, secs. 6 and 19; Art. 10, secs. 6, 9, 10, 11, 12, 13 and 20. The above provisions, however, all consist of limitations on the powers of the municipalities or that may be conferred on them by the Legislature, and nowhere is the power of the Legislature to create such corporations, except as to cities and towns, in any way abridged or restricted. The only regulation of this power found is the inhibition against any local or special law "creating corporations" (Art. 4, sec. 53), and there is and can be no claim that the act in question is local or special. (3) This act does not violate the provisions of section 11, article 10, of the Constitution, limiting the annual levy for "county purposes" in counties containing an assessed valuation in excess of thirty millions of dollars, as does Buchanan, to not exceeding thirty-five cents on the hundred dollars. The tax levied by the hospital district for the first year is twenty-five cents on the hundred dollars valuation. If this levy is for "county purposes,"

within the purview of the above section of the Constitution, then as this levy, added to that made by the county for "county purposes," would total sixty cents on the hundred dollars valuation, it is beyond the power of the district to make, or the Legislature to authorize. Clark v. Adair County, 79 Mo. 536; 11 Cyc. 342. There is no general welfare clause in any statute applicable to counties. The county court is one of limited jurisdiction, possessing no powers except such as are expressly conferred on it by statute or such as are necessarily incident to those actually conferred. Sec. 6, art. 6, of the Constitution, confers no power or jurisdiction on county courts except "to transact all county and such other business as may be prescribed by law." No officer or agent of the county can bind the county in anything except in the manner and to the extent expressly authorized by statute. It would seem, therefore, that the reason of the matter is that counties do not possess the powers conferred on hospital districts by this act. If they do not, then, of course, it must follow that the limitation of the levy that may be made for "county purposes" cannot apply. (4) The act in question is not in violation of either section 1, section 3, or section 10 of article 10 of the Constitution.

*Spencer & Landis* for respondent.

(1) Even though the taxes provided for in this act are to protect and preserve the public health they are within the meaning of the words "county purposes," as used in section 11 of article 10 of the Constitution of the State. Brooks v. Schultz, 178 Mo. 222. (2) As these current expenses must first be paid, when they consume the entire taxable limit, no further indebtedness can be created by act of the county or by legislative enactment. Anderson v. Ripley County, 181 Mo. 46. Where the county court has made a full levy under the Constitution for county purposes, an additional levy cannot be made for any other purposes.

State ex rel. v. Railroad, 145 Mo. 596; State ex rel. v. Piper, 214 Mo. 439. (3) It has frequently been held that taxes may only be levied for public purposes, and that they cannot be levied under the Constitution to aid a private person or an individual, and unless the purposes for which the enactment of the statute in question is intended, come within the meaning of that rule, then these taxes provided for in this law are contrary to law and the Constitution. State ex rel. v. Switzler, 143 Mo. 287; State ex rel. v. St. Louis, 216 Mo. 47.

LAMM, C. J.—Plaintiff appeals from the judgment of the Buchanan Circuit Court in a proceeding to obtain an order from that court directed to the county court of Buchanan county requiring the latter to levy certain taxes theretofore "levied" by the Board of Commissioners of the Tuberculosis Hospital District of Buchanan County, the order being denied.

In 1911 the General Assembly enacted a statute prescribing a method for the creation of public tuberculosis hospital districts, the appointment of boards of commissioners for such districts when organized, and prescribing the duties and powers of such boards— among them the power to levy taxes, to establish and maintain public tuberculosis hospitals and dispensaries. [Laws 1911, p. 130, sec. 8.]

In conformity with that act an election was held in Buchanan county in November, 1912, resulting in a favorable vote, the organization of a district, and the appointment by the Governor of a board of commissioners (hereinafter called the board). Such board organized in conformity with the act and the district became "a body corporate and politic" by the name and style of the Tuberculosis Hospital District of Buchanan County. [Section 2.]

In 1913 (Laws of 1913, p. 143 et seq.) the General Assembly repealed section eight of the Act of 1911 and in lieu thereof enacted four new ones, viz., 8, 8a, 8b,

and 8c.  There was also an emergency clause putting the amendatory act into immediate effect on its approval, which happened March 20, 1913.

A summary of sections 8, 8a, and 8b may not be amiss.  (Section 8c pertains to bond issues to acquire lands and erect hospitals and improvements thereon etc., but, as that power is not in question in this cause, we shall say nothing about it.)

Section 8 gives the board power by resolution to levy annually a tax of not exceeding one-fourth of one per cent on each dollar of the aggregate of the assessed valuation of all property of every kind within said district, subject to taxation for State and county purposes, and shown by the last preceding assessment, to be used by the board for the support, maintenance and operation, additions and improvements, or all other necessary and proper expenses of carrying out the purposes for which the district was created.  Such resolution is to be certified to the proper prosecuting attorney or city counsellor, as the case may be.

Section 8a provides that the prosecuting attorney or city counsellor, as the case may be, on receipt of such resolution certifying that a levy had been directed, shall immediately present a petition to the circuit court of his county setting forth the facts and specifying the reasons why such tax should be assessed, levied and collected; whereupon such court, on being satisfied that such levy is authorized by law and that the assessment, levy and collection thereof will not be in conflict with the Constitution and laws of this State, shall make an order directed to the county court commanding it to have assessed, levied and collected said tax, and shall enforce such order by mandamus or otherwise.  This circuit court order is to be certified to the county court and thereat it becomes the duty of such county court "to include the tax levy so ordered in the annual levy to be made for the current year for State and county . . . purposes."  Thereat such levy shall be carried

out on all the assessment books of property within the district and such taxes shall be collected by the collector at the same time and in the same manner that State and county taxes are collected. When collected, such tax is to be turned over to the treasurer of the board, and provision is made for suits to enforce payment or to collect the same without suit, precisely as is provided by the laws relating to collection of taxes, and such taxes are made a lien upon the property situate in the district the same as other taxes.

Section 8b prescribes that the board shall have power to make one tax levy of one-fourth of one per cent of each dollar of the assessed value of taxable property in the district (to be ascertained as in Sec. 8a) for the purpose of paying for lands condemned or purchased for tuberculosis hospitals and for erecting improvements, reconstructing hospital buildings, etc., such levy to be subject to the same provisions enumerated in section 8a and to be collected in the same way.

Following the passage of that amendatory act, to-wit, on the 31st day of March, 1913, the board passed a resolution levying a tax of one-fourth of one per cent of the assessed value, on all taxable property situate in said district, having regard to the assessment for State and county purposes for the preceding year, and such steps were taken thereafter that the prosecuting attorney of Buchanan county became charged with the duty of presenting a petition to and obtaining an order from the circuit court directing the county court to levy such tax. Such petition in the name of the board he presently presented, showing, *inter alia,* that the district had no lands, buildings or other equipment to carry out the purposes for which it was created, and that the levy was necessary for the acquisition of lands, the erection of buildings and the maintenance of hospitals for the treatment of persons suffering from tuberculosis, no levy having been theretofore made for such purpose. He further informed the court that the levy

and collection of the tax were not in conflict with the Constitution or laws of this State.

Presently a hearing was had on issues made by the pleading of one Peter, who intervened as a householder and resident taxpayer of the county, on leave granted. Intervener alleged that the valuation of the property situate in Buchanan county is in excess of $30,000,000 for taxation purposes; that under the Constitution (Sec. 11, art. 10) there could not be levied for county purposes in said county a tax in excess of thirty-five cents on the hundred dollar valuation, that a levy at that rate was the usual one in that county and was necessary for county purposes, and that the levy of the proposed tax of one-fourth of one per cent of each dollar (i. e., twenty-five cents on each $100 valuation) would be in contravention of that constitutional provision, and further that not only is the Amendatory Act of 1913 unconstitutional in the particular mentioned, but that it was violative of sections 1 and 3 of article 10 of the Constitution, for that the purpose for which the levy is made is prohibited thereby.

The court found the averments of the petition true except that one averring the constitutionality of the amended act. It held contra on that point and refused to make the order on the ground that the act of the Legislature purporting to authorize such order violates the Constitution, and hence confers no jurisdiction to make such order. Accordingly it dismissed the petition and adjudged costs against plaintiff.

As said, an appeal was prosecuted from the judgment of the court denying the order and dismissing the petition.

The cause, advanced on motion, was submitted on briefs on both sides and oral arguments by appellant.

There are propositions, some of law, others of fact, which it cannot be amiss to lay down as a foreword, to-wit:

(a) Courts, out of solemn respect to the law-maker, never impute to him an intention to circumvent, abrogate, or impair a constitutional provision; hence they approach the question of the constitutionality of a law with great caution, view it from all angles and in all its aspects, giving free play to a strong (even violent) presumption in favor of its validity; hence, too, they never declare a law void unless its nullity and invalidity are placed, in their judgment, beyond a reasonable doubt; hence (and most of all) every allowable art, part and act of judicial power, every wise and benign rule of construction and interpretation, should be astutely levied upon and exercised in so interpreting the law, if possible in reason, that none of its parts perish. [Ex parte Loving, 178 Mo. l. c. 203 et seq.; State ex rel. v. Warner, 197 Mo. l. c. 656; In re Wellington et al., Petitioners, 16 Pick. l. c. 95; State ex rel. v. McIntosh, 205 Mo. l. c. 602; State ex rel. v. St. Louis, 241 Mo. l. c. 247.]

*Constitutionality of Statute.*

But if, when all is done for it that can be done in reason, it appears that there can be no two ways about it but that the law violates the Constitution, then the paramount authority of that instrument breaks the law. It becomes a mere empty noise and is as if it never had been at all.

To declare a statute unconstitutional is the exercise of a high and delicate, but necessary, judicial power to be fearlessly used if need calls and there is no way out of it. In no other way known to intelligent men can a government by written constitution exist except there be power somewhere to make statutes square with that instrument, and to say whether or not they do. That high power is now lodged with the courts; there it has been for generations and there it must remain until the people by the exercise of their sovereign will, ex-

*Power Lodged in Courts.*

pressed in a constitutional way, take it away and lodge it elsewhere.

(b)   So vast and imminent is the peril struck at by the statute, so surely has science shown us in these latter times that mankind is not (as once was thought) helplessly bound, as by a decree of fate (to-wit, by some dreadful and immutable law of heredity) to be the pathetic victim of an incurable and inherited disease, tuberculosis, so surely is the benign object of the law directed to the welfare of the people in protecting them from a scourge bred by infection, a scourge that is "communicable, preventable and curable," that kills one-tenth to one-seventh of all our people and one-third of all who die between the ages of eighteen and forty-five—I say, in view of such premises, my personal feelings in deciding this cause are expressed in the first part of the judgment of CREWE, C. J., in the matter of the petitions of Lord Willoughby and the Earls of Oxford and Derby anent the noble house of De Vere and the earldom of Oxford, pending and adjudged in the High Court of Parliament, in the first year of Charles I (Sir William Jones's Rep., 1 vol., p. 96) viz.: "I have labored to make a covenant with myself that affection may not press upon judgment; for I suppose there is no man that hath any apprehension of gentry or nobleness, but his affection stands to the continuance of so noble a name and house, and would take hold of a twig or twine-thread to uphold it."

*Affection for Public Welfare.* [margin note]

For "gentry and nobleness," read *public weal,* and for "name and house," read *statute,* and the excerpt justifies itself to me as apposite.

(It may not be getting too far afield for correct judicial discourse to observe that the discriminating scholar who has not access to the old report may thank me for citing him to 252 Mo. x, where the remainder of Chief Justice CREWE's observations, one of the most

notable and rugged examples of unalloyed eloquence that ever fell from judicial lips, may be found quoted in the funeral oration of Judge PHILIPS in the memorial services of our bar for our late brother, GANTT.)

Despite our respect for the motive of the statute and our labor to sustain it, we are constrained to follow the cold reason of the thing in the beaten path of interpretation and sustain the judgment instead, as will now appear.

(c) It is argued for respondent that the statute is void because violative of section 1, article 10, of the Constitution, reading: "The taxing power may be exercised by the General Assembly for State purposes, and by counties and other municipal corporations, under authority granted to them by the General Assembly, for county and other corporate purposes."

It is further argued that it violates section 3 of article 10, reading: "Taxes may be levied and collected for public purposes only. They shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and all taxes shall be levied and collected by general laws."

(1) It is not apparent why the purpose to be subserved by the tax in question is not a *public purpose* within the intendment of section 3, supra.

Public Purpose. The evil in the mind of the Constitution maker and blazoned forth in his instrument was the danger of a misuse of the taxing power for *private purposes,* and we are not willing to hold that the statute comes within the mischief interdicted thereby. The argument of respondent in that behalf is faintly developed and if there were no other constitutional obstacles in the way of the statute, we would be inclined, at first blush and without at this time pursuing the matter in all its ramifications and bebarings, to hold that statute well enough from that angle.

(2)   Coming to section 1 of article 10, supra, it is an unquestionable limitation on the sources of the taxing power.  It is a plain provision made by plain men for plain men locating that power in only two places, namely, in the General Assembly for State  purposes, and in  counties and "other municipal corporations" for "corporate purposes."  It can be looked for at no other places than those two.  If, now, the Act of 1911 had not been amended by the act of 1913, it would have stood as a palpable violation of the Constitution in that regard; for the Act of 1911 granted the taxing power to the board of commissioners of the tuberculosis hospital district—a source of taxing power strange to the Constitution, and a statutory invention so clearly outside of the provisions of that instrument as to be a daring and dangerous innovation.  It cannot be held that the hospital district is a municipal corporation within the purview of section 1, supra [Black's L. Dict. (2 Ed.), tit. "Municipal Corporation."]  Where would the end be on that road?  What other new source of taxing power would come in if the constitutional barrier is to be thus overleaped or broken down?  The maxim, withstand beginnings, could nowhere be better applied than by stamping out such heresy when it first rears its head.

*Corporate Purpose.*

The Act of 1913 obviously was intended to bring the law within constitutional sanctions in that particular.  True, it directs that the board by reso-lution may *levy* a tax rate in a given amount. The use of the word "levy" was unfortunate; for by common usage that word expresses a concept inseparably and intrinsically connected with the taxing power. But the Act of 1913 requires the avouchment of the county court and a levy by that body as a condition precedent to the consummation of legal tax levy, so that the Act of 1913 may be interpreted to mean that the county court must make the levy, but may not do so

*Levy.*

unless the board has theretofore by resolution required it to be done. The word "levy" in the grant of power to the board might be construed, in a pinch, to be a mere preliminary order or requisition evidencing the official action of the board upon the amount necessary for the purposes in hand.

Section 1 of article 10, under review, uses the phrase "corporate purposes." That is a broad term, intentionally left broad and general and to **Corporate Purpose.** be broadly construed or interpreted. We are not prepared to say it does not mean county purposes or city purposes, as the case may be; and what, in turn, is a city or county purpose must be determined by a reference to the whole body of the learning on that score. We will not go into that field, because roads, bridges, the care of paupers, of the insane, of prisoners, official salaries, the care of public buildings, etc., have usually been considered county purposes within the purview of revenue laws and the administrative details of county business, and, having in mind the settled breadth and scope of county purposes as evidenced by a group of statutes, we are not prepared to say that a statutory scheme involving the prevention and cure of infectious diseases imperiously menacing the public health, and the care of those who are afflicted therewith, who are indigent, at public expense, in the same public hospital with those who can pay and are required to pay, as here, would not be such essential part of the public welfare as would become a corporate purpose, i. e., a county purpose, within the fair intendment of the broad constitutional term.

The provision of the Act of 1913 requiring the resolution of the board to be lodged with the prosecuting attorney and requiring that officer to **Avouchment of Circuit Court.** present a petition to the circuit court in order that the legality of the tax levy be predetermined by that tribunal, and that the county court should only move under the direction

and order of the circuit court, has two aspects, viz.: In one it would appear at first blush that the lawmaker entertained such serious doubts of the validity of his enactment that he interdicted its enforcement except on the *vise* and avouchment of the circuit court. But looked into, that is not so; for the other is that the lawmaker, out of abundant caution, was but squaring his enactment with those provisions of the general statutes, commonly known as the "Cottey Act" (Laws of 1879, p. 185) carried forward as live law in some of the sections of article 5, chapter 117, Revised Statutes 1909, entitled "Taxation and Revenue." The Cottey Act provides for the same kind of an application to the circuit court and puts the same limitation on the exercise of the taxing power in some of its features; hence all sinister significance, in the way of a supposed doubt in the lawmaker's mind, must be put to one side. As at present advised, we see no insuperable obstacles to the law in section 1, article 10, of the Constitution, standing alone; but that section, as well as section 3, supra, must be read in connection with section 11 of article 10 of the Constitution, for they pertain to the same subject-matter and are strictly *in pari materia*. [Brooks v. Schultz, 178 Mo. l. c. 228.]

(d) It is argued for respondent that section 11, article 10, of the Constitution is violated by the Amendatory Act of 1913, and this contention presents the decisive question and discloses the fatal blemish in the act.

That section is long and we reproduce only those parts material here, viz.: "Taxes for county . . . purposes may be levied on all subjects and objects of taxation; . . . For county purposes the annual rate on property . . . in counties having thirty million dollars or more, . . . shall not exceed thirty-five cents on the hundred dollars valuation. . . . For the purpose of erecting public buildings in counties, cities or school districts, the rate of taxation herein limited

may be increased when the rate of such increase and the purpose for which it is intended shall have been submitted to a vote of the people, and two-thirds of the qualified voters of such county . . voting at such election, shall vote therefor. The rate herein allowed to each county shall be ascertained by the amount of taxable property therein, according to the last assessment for State and county purposes . . . said restrictions as to rates shall apply to taxes of every kind and description, whether general or special, except taxes to pay valid indebtedness now existing, or bonds which may be issued in renewal of such indebtedness.''

That part of section 11, above, referring to the erection of public buildings and the increase of taxation therefor upon the vote of two-thirds of the qualified voters of the county may be laid out of view for the purposes of the instant case, because the facts do not bring the case within that provision, and no contention is made by appellant that the tax levy in judgment stands on that foot or is validated thereby.

Neither is it contended by appellant that the proposed tax enters into and becomes an integral part of the thirty-five cents on the hundred dollars authorized to be levied for county purposes.

The case, then, must stand or fall on the proposition that the proposed levy is in addition to the thirty-five cents allowed by the Constitution for "county purposes." Evidently that was the theory of the lawmaker. Otherwise, if the constitutional levy of thirty-five cents for roads, bridges, the care of the insane, paupers, criminals, and the current expenses of the county for salaries, jury service, care of public buildings and what not, is to be depleted by a deduction of a twenty-five cent levy on the hundred dollars for the tuberculosis hospital district, then, all the usual and needful activities of the county would be crippled by starvation into a state of suspended animation akin to death. Self-evidently so

Excessive Levy.

benevolent an act as the one under review could not have contemplated so unbenevolent and injurious a result. The itching idea in the lawmaker's mind was to *progress,* i. e., to keep what we have and get more, not to go backward in governmental purpose and action. The lawmaker, then, must be held to have intended his act to permit a levy in addition to the thirty-five cents permitted by the Constitution, and appellant so argues in a brief most commendable in tone and uncommonly ingenious in reasoning. But we shall not follow the lead of learned counsel. That provision of the Constitution may neither be struck down by the General Assembly nor ignored, nor evaded by deft indirection. It stands there as an insurmountable barrier to an increase in taxation for county purposes beyond the maximum rate of thirty-five cents on the hundred dollars.'' It goes further. It interprets itself. It declares that the restriction shall apply to taxes of every kind and description whether general or special, except taxes to pay valid indebtedness now existing, or bonds which may be issued in renewal of such indebtedness. Looked at from every standpoint, we have come to rate it as our bounden duty to so write the law. The student in Missouri history need not be told that the Constitutional Convention of 1875 met at a time when there was a deep-going and wide-spread popular revulsion from high taxes incident to a prior expansion of county and city expenditures and indebtedness and a present contraction of debt-paying ability. That convention provided remedies therefor with unsparing and unmistakable words. It left no loopholes for evasion or bars down in that behalf. It encompassed public frugality by setting impassable metes and bounds to taxation, public expenditure and the creation of public indebtedness. Its instrument must be construed by courts so as to preserve its spirit and further its purpose. *Ita lex scripta est.*

If, peradventure, the State has outgrown prescribed taxation limits, or new discoveries have been made or a new public sentiment has sprung demanding as a matter of social justice and public welfare that the hard-and-fast limits of the present Constitution no longer are adequately responsive to the people's needs, then, the remedy is not for this court to emasculate or whittle away the paramount law by refinements, but it is for the people to at all times cry aloud (*vide,* Cato's iteration and reiteration anent the destruction of Carthage) for an amendment to the Constitution in a straightforward constitutional way, or to frame and adopt a new one.

Unless the proposed tax be construed to be for corporate purposes, which we think (and have ruled) are equivalent to county purposes, it has no constitutional warrant at all.

We are referred to principles of law permitting the levy of special assessments for local improvements, as for example, for park, street, levee and drainage purposes. But those benefit assessments have been validated because, in their essence, while referable to the taxing power in a sense, they are not taxes in a constitutional sense, but stand on a distinct principle not at all applicable here. They are taxes only in a loose and colloquial sense and not in a constitutional or legal sense. We cite a case or so to the point (from one discern all). [Farrar v. St. Louis, 80 Mo. l. c. 387 et seq., and cases cited and reviewed; Kansas City v. Bacon, 147 Mo. l. c. 282.] Appellant's case cannot prosper on the theory validating special assessments for local improvements. The tax levy here sought is of a tax strictly so by name and by inherent quality. We have no doubt the act, in the particulars in judgment, is unconstitutional. It follows that the circuit court did right in refusing to order a tax levy.

<div style="margin-left:2em"><strong>Benefit Assessments.</strong></div>

Let the judgment be affirmed. *Woodson, Graves, Walker* and *Faris, JJ.,* concur; *Brown, J., dubitante; Bond, J.,* concurs in result.