**LUSK et al. v. WHITE, County Treasurer.**

No. 7320—Opinion Filed April 11, 1916.

Dissenting Opinion Feb. 12, 1918. Rehearing Denied Feb. 12, 1918. Second Petition for Rehearing Denied Aug. 20, 1918.

(173 Pac. 1128.)

(Syllabus.)

**1. Separate Schools—Constitutional Provisions.**

Section 3, art. 13, Williams' Constitution, provides separate schools for white and colored children with like accommodations shall be provided by the Legislature and impartially maintained.

**2. Separate Schools—Statutory Provision.**

· Section 8, art. 15, c. 219, Sess. Laws, 1913, provides: "In all counties where county separate schools for white and colored children are maintained, the county excise board shall annually levy a tax on all taxable property in their respective counties sufficient to maintain such separate schools, as hereinafter provided. Upon an estimate made by the county commissioners, said taxes shall be estimated. published, levied and collected. in the same manner as other taxes for county purposes. * * *"

**3. Schools and School Districts—Separate Schools—Taxation by County—Constitutional and Statutory Provisions.**

The trial court held that the excise boards of counties where separate schools are maintained, are authorized by section 3, art. 13, Williams' Constitution, and section 8, art. 15, c. 219, Sess. Laws 1913, to levy a tax of 1 mill on all taxable property in their respective counties "for separate schools," so long as the total levy for county purposes did not exceed the limitation upon county levies contained in section 9, art. 10, Williams' Constitution, to wit, 8 mills, exclusive of aid to the common schools. Held, not error.

Sharp, C. J., and Turner, J., dissenting.

Error from District Court, McCurtain County; C. E. Dudley, Judge.

Action by James W. Lusk and others, as receivers of the St. Louis & San Francisco Railroad Company, and the St. Louis & San Francisco Railroad Company against Leon A. White, County Treasurer of McCurtain County, Oklahoma. Judgment for defendant for costs, and plaintiffs bring error. Affirmed.

W. F. Evans, R. A. Kleinschmidt, and Fred E. Suits, for plaintiffs in error.

E. G. Nelson, Co. Atty., for defendant in error.

KANE, C. J. This was an action to recover from the county treasurer of McCurtain county a certain sum of money, which it was alleged was paid to him under protest upon an illegal levy of taxes for county purposes by the excise board of said county. Upon trial to the court there was judgment for the defendant for costs, and the plaintiff in error, being dissatisfied therewith, commenced this proceeding in error for the purpose of reviewing the action of the trial court. By agreement of counsel, the only question of law presented for our consideration involves the right of the excise board to make a county levy of 1 mill "for separate schools" in addition to a levy of 1 mill "for common schools." For the purpose of presenting this question, it was further agreed that the levy made for said McCurtain county for said year is the total of the following named county levies, to wit: For general county purposes, 5 mills; for sinking fund, 1.6 mills; for common schools, 1 mill; for separate schools, 1 mill.

It is the last item to which plaintiff takes exception. If we understood counsel, they base their contention that this item is illegal upon the assumption that this levy is repugnant to that part of section 9, art. 10, Williams' Constitution, which limits the county levy to not more than 8 mills, and further provides that any county may levy not exceeding 2 mills additional for county high school and aid to the common schools of the county, not over 1 mill of which shall be for such high school, and the aid of said common schools, and shall be apportioned as provided by law. They say that this proviso does not authorize the county excise board to make a county levy "for separate schools." In our judgment, there is nothing in the record which indicates that it was the intention of the excise board that the item to which exception was taken should be levied as "aid to the common schools of the county," or that they were of the opinion that they derive such authority from the foregoing constitutional provision. Section 3, art. 13, Williams' Constitution provides:

"Separate schools for white and colored children with like accommodation shall be provided by the Legislature and impartially maintained."

In pursuance of this constitutional mandate, section 8, art. 15, c. 219, Session Laws 1913, was enacted, which provides:

"In all counties where county separate schools for white and colored children are maintained, the county excise board shall annually levy a tax on all taxable property in their respective counties sufficient to maintain such separate schools, as hereinafter provided. Upon an estimate made by the county commissioners, said taxes shall be estimated, published, levied and collected, in the same manner as other taxes for county purposes. * * *"

The foregoing provisions, it seems to us, specifically clothe the excise board of McCurtain county, it being a county where separate schools are maintained, with authority to make the levy complained of. The trial court held that, so long as the amount of the total levy for county purposes did not exceed the limitations upon the "county levy" contained in section 9, art. 10, Williams' Constitution, to wit, 8 mills, it could not be held to be illegal. We are of the opinion that this much, at least, may be said with perfect safety. Counsel for defendant contends that, inasmuch as the Constitution makes it mandatory upon the Legislature that separate schools for white and colored children shall be provided with like accommodations and impartially maintained, there need be no limit upon the power placed in the county authorities to furnish the necessary funds by taxation to carry out this mandate. As the county levy herein does not exceed the constitutional limitation for county purposes, there is no necessity at this time for going any further than the trial court did.

For the reasons stated, the judgment of the court below is therefore affirmed.

All the Justices concur, except

SHARP, C. J. (dissenting). I am unable to concur in the opinion of the court. To my mind the limitation upon the levy is fixed by the act of May 15, 1913 (chapter 195, Sess. Laws 1913, pp. 435, 436), providing that, where the assessed valuation of any county is less than $10,000,000 and not less than $4,000,000 the county levy shall not exceed 5 mills for current expenses, and 1 mill additional in aid of common schools of the county. This act, which it would seem is controlling, the opinion does not take into consideration; in fact does not notice. The levy of 5 mills for "general county purposes" answers to the authority given by the stat-

ute to levy 5 mills for "current expenses." The levy of 1.6 mills for sinking fund, by the terms of the act, is not included in the maximum authorized levy for current expenses. The third item of 1 mill for common schools is the "one mill additional in aid of common schools of the county" authorized by the act. Omitting the levy of 1.6 mills for sinking fund, as we should do, and adding the other two items, we have a total levy of 6 mills, the maximum levy authorized in counties of the foregoing classification. It follows that an additional levy of one mill for separate schools is in excess of the maximum levy, which the county was authorized to impose, and hence to that extent the action of the excise board was invalid. It was so held in Lusk et al. v. Starkey, County Treasurer, 53 Okla. 794, 158 Pac. 918. In that case the itemized statement of the expenses of Jackson county and the levy based thereon was divided as follows:

| | | |
|---|---|---|
| Salaries | .8 | mill |
| Court | .5 | mill |
| Contingent | .59 | mill |
| Supplies | .38 | mill |
| Poor and insane | .33 | mill |
| Roads and bridges | 1.70 | mill |
| Sinking (fund) and interest | .62 | mill |
| Separate schools | .004 | mill |
| Road construction | .25 | mill |
| Widows and orphans | .08 | mill |
| Free fair | .20 | mill |

—or a total of 5.454 mills. Deducting from the levy the item of .62 mill for sinking fund and interest, as is permissible under the act of May 15, 1913, and the levy of .25 mill for the construction and maintenance of county highways authorized by section 2, art. 3, c. 173, of the act of March 15, 1915 (Sess. Laws 1915, p. 323), it was said that "there still would be an excess tax of .584 mills, the levy for which no authority can be found in law." Now, as there was included in such excess levy an item of .004 mill for separate schools (as was admitted in the case), it is difficult to understand why the conclusion reached in that case should not control in the case under consideration. If section 3, art. 13, of the Constitution, considered in connection with section 8, art. 15, c. 219, Sess. Laws 1913, clothed the excise board "with authority to make the levy complained of," so long, at least, as the maximum constitutional levy of 8 mills for county purposes was not exceeded (as held in the majority opinion), then the same end should have been attained in the Jackson county case. But we think the conclusion arrived at in

that case was correct, in so far at least as the court held the excess levy to be void. We are, however, unable to reconcile it with the case at bar, wherein the court holds that "the levy may be sustained so long as the total levy for county purposes does not exceed the maximum constitutional levy of 8 mills." It matters not that section 9, art. 10, of the Constitution fixed the maximum levy for the county at not more than 8 mills, with the right to impose an additional levy of one mill in aid of the common schools of the county. This because the section of the Constitution referred to is a limitation upon, and not a grant of power to the Legislature (Thompson et al. v. Rearick, 33 Okla. 283, 124 Pac. 951) ; and as the Legislature has not seen fit to authorize the maximum constitutional levy for county purposes, but instead has fixed a lesser sum, it would seem obvious that the levy authorized by the statute, as held in the Jackson county case, must control.

Section 3, art. 13, of the Constitution requires that separate schools for white and colored children, with like accommodations, shall be provided by the Legislature and impartially maintained; while section 8, art. 15, c. 19, of the Session Laws of 1913, provides that in all counties where separate schools for white and colored children are maintained, the county, excise board shall annually levy a tax on all taxable property in their respective counties sufficient to maintain such separate schools, and requires that upon an estimate made by the county commissioners taxes for such schools shall be estimated, published, levied, and collected in the same manner as are other taxes for county purposes. The Constitution, while providing for the organization and maintenance of separate schools for white and colored children, does not undertake to provide, nor should it be so construed as to mean, that such schools are to be maintained irrespective of the cost to the taxpayers; that is to say, that the limit upon the tax levy fixed by statute may, when necessary, be exceeded, so long as it is not in excess of the constitutional limitation of 8 mills. It is one thing to say that the Legislature shall provide like school accommodations for the two races, and that public officers shall discharge certain duties in respect thereto, and quite another to say that in the administration of such laws the total aggregate levy in any year shall not exceed a fixed amount. A construction of the Constitution (if involved) which would thus authorize the defeat of one of its main purposes, should not be entertained for a

moment. This much is clear. This must be so or the framers of our Constitution have wrought in vain to limit the expense of county government, and their whole legislation on this subject may be set at naught; for to defeat it entirely, it would only be necessary to find that the Constitution, by some other provision, had imposed upon the Legislature some duty in respect to the administration of the laws of the state, to authorize the county taxing authorities, at will, to exceed the limitations fixed upon the levy by statute, if not (as contended by the county attorney may be done) to exceed the maximum constitutional limit fixed by the Constitution. State ex rel. Burgess v. K. C., St. J. & C. B. R. Co., 145 Mo. 596, 47 S. W. 500; Board of County Com'rs v. Peter, 253 Mo. 520, 161 S. W. 1155, Ann. Cas. 1915C, 310; Fremont, etc., Ry. Co. v. Pennington County, 20 S. D. 270, 105 N. W. 929.

It is a cardinal rule in the construction of a constitution that it is to be so interpreted as to permit the objects for which it was framed and adopted, and to this end the whole instrument is to be examined, with a view to ascertaining the meaning of each and every part. Gibbons v. Ogden, 9 Wheat. 1, 6 L. Ed. 23; Prigg v. Pennsylvania, 16 Pet. 539, 10 L. Ed. 1060; Julliard v. Greenman, 110 U. S. 421, 4 Sup. Ct. 122, 28 L. Ed. 204; Stanford v. Magill, 6 N. D. 536, 72 N. W. 938, 38 L. R. A. 773. The presumption and legal intendment is that each and every clause in a written constitution has been inserted for some useful purpose, and therefore the instrument must be construed as a whole, in order that its intent and general purpose may be ascertained. As a necessary result of this rule, it follows that, wherever it is possible to do so, each and every provision must be so construed that it shall harmonize with all others, without distorting the meaning of any of such provisions, to the end that the intent of the framers may be ascertained and carried out and effect given to the instrument as a whole. Large Oil Co. v. Howard, State Auditor, 63 Okla. 143, 163 Pac. 537.

Section 7904, Rev. Laws 1910, establishes separate schools for white and colored children in all counties, and provides that the boards of county commissioners shall annually provide for a tax on all taxable property in the respective counties, sufficient to maintain said separate schools, the necessary taxes to be estimated, published, levied, and collected in the same manner as are other taxes for county purposes. The method of taxation for county purposes is that

provided by section 7378, Rev. Laws 1910, which requires that boards of county commissioners shall furnish the county excise board an estimate of the needs of the county for the ensuing year. It is by the same section provided that:

"The estimate for county purposes shall be itemized so as to show the amount estimated to be necessary for salaries; for court expenses; for county supplies; for the support of the poor and insane; for roads and bridges; for aid of the common schools of the county; for contingent fund; for county high schools, if any; for a sinking fund which shall, with the money alrealy in such fund, be sufficient to pay, at maturity, all bonded indebtedness of such county coming due; for the interest coupons falling due on outstanding bonds of the county and an additional sum equal to one-third of the original amount of all outstanding judgments against the county where one-third or more of such judgments remains unpaid and in case less than one-third remains unpaid, then the estimate shall include the unpaid balance."

The use of each of these funds is limited by other provisions of the statute. By sections 6765 to 6770 the various funds are described, and the items of expense which may be paid from each are specifically designated. Section 6770 provides that all allowances properly chargeable against the county, not therein made chargeable to some other fund, shall be payable out of the contingent fund. If then, by virtue of the terms of section 7904, the duty devolves upon the county to maintain the separate schools of the county and to levy taxes therefor in the same manner as for other county purposes, in view of the provisions of section 7378 (which specifically enumerate the items to be contained in the estimate for county purposes), it would seem that the maintenance of separate schools, so as to be borne by the county, must be paid out of the contingent fund, since, under the statute, such item is not properly chargeable to any other designated fund. If the expenses incident to the maintenance of separate schools of the county are, by virtue of the statute, required to be paid out of the contingent fund, then there remains no question but that such expense is one of the current expenses annually recurring in the county, and as such falls within the limitation prescribed by chapter 195, Sess. Laws 1913.

It will be observed that chapter 195, near its conclusion (section 1) contains the following:

"Provided that the words 'current expenses' as used in this section, shall not include an annual sinking fund to pay the bonded indebtedness of such county, city, town, township, or school district at its maturity, or the interest falling due on its outstanding bonded indebtedness, or any judgment against such county, city, town, township or school district."

It is apparent from a reading of this paragraph that the Legislature intended to include within the term "current expenses" all of the expenses of the county incurred in the discharge of the duty imposed upon its officers by law, except those last enumerated.

Chapter 219 of the Session Laws of 1913 is a comprehensive revision of the laws for the government of the common schools of the state; State ex rel. Friend, Co. Atty., v. Cummings, 47 Okla. 44, 147 Pac. 161; Searcy et al. v. State ex rel. Carl et al., 64 Okla. 257, 167 Pac. 476.

Chapter 195, Session Laws of 1913, is a special statute fixing the maximum county levy according to a fixed classification based upon assessed valuation. The chapter is an amendment to section 7376, Rev. Laws 1910, upon the subject of municipal levies, and which section forms a part of article 8, c. 72, of the Revised Laws upon the general subject of revenue and taxation. The remaining sections of article 8, c. 72, are not affected by the amendment, and as amended the article furnishes the law fixing a limitation upon municipal levies. Other sections of the article provide for the annual estimate of municipal expense; create the county excise board and define its duties; provide for elections for increased levies and fix the manner in which the same shall be conducted; provide for the canvass of the returns, the making up of the tax roll, and when it shall be delivered to the county treasurer, and define the duties of the county clerk and county treasurer. In brief, the article affords the legal machinery whereby the assessment of property for taxation is effected. This field is in no sense occupied or contemplated by section 8, art. 15, c. 219, which, in this respect, only provides that in counties where separate schools for white and colored children are maintained, the county excise board shall annually levy a tax on all taxable property in their respective counties sufficient to maintain such separate schools. While the section requires that the tax shall be based upon estimate made by the county commissioners, and that the tax shall be estimated, published, levied, and collected in the same manner as other taxes for county purposes, yet it does not undertake to fix the amount that may be levied for such pur-

# 320 68 Oklahoma Reports

pose. Its two pertinent purposes are to prescribe the duty of the county excise board and to provide that the taxes authorized shall be estimated, published, levied, and collected in the same manner as are other taxes for county purposes.

Chapter 195, Sess. Laws 1913, amending section 7376, Rev. Laws 1910, was approved May 15, 1913, and because of the emergency clause became immediately effective. Chapter 219, revising the general school laws of the state, was approved May 22, 1913, but by the express terms of section 14, art. 17, thereof, did not become operative until January 1, 1914. There is nothing to indicate that anything contained in chapter 195 is repealed by chapter 219. Indeed, as the statutes occupy separate and distinct fields of operation, such contention could not well be made. Even though involved, it is without avail, as it is a familiar rule of construction that where two statutes can be read together without contradiction, repugnancy, or absurdity, both should be given effect. It is not enough to justify the inference of repeal that the latter law is different; it must be contrary to the prior law. The two statutes were passed at the same session of the Legislature and at nearly the same time. Statutes enacted in such situation should receive a construction, if possible, which will give effect to each, as each is supposed to speak the mind of the same Legislature, and the words used in each should be qualified and restricted, if necessary, in their construction and effect, so as to give validity and effect to every other act passed at the same session. Smith v. Townsend, 1 Okla. 117, 29 Pac. 80; Trapp, Auditor, v. Wells Gargo Express Co., 22 Okla. 377, 97 Pac. 1003; Ratliff v. Fleenor, 43 Okla. 652, 143 Pac. 1051; also the presumption is that different acts passed at the same session of the Legislature are imbued of the same spirit and actuated by the same policy, and that one was not intended to repeal or destroy another, unless so expressed. Board of County Commissioners et al. v. Alexander, 58 Okla. 128, 159 Pac. 311; State v. Prairie Oil & Gas Co., 64 Okla. 267, 167 Pac. 756. There is no repugnancy in the statutes, much less a clear repugnancy such as would be necessary to work an implied repeal of the statute previously enacted, but which became effective long prior to the act of May 22, 1913.

When the Legislature in section 8, art. 15, c. 219, made it the duty of the county excise board to annually levy a tax on all taxable property "in their respective counties sufficient to maintain such separate schools," it meant only to say that the levy should not exceed that authorized by law, and not that the levy should be in excess of the limitation fixed elsewhere by the applicable revenue and taxation laws of the state.

Therefore we say that there is nothing in either section 3, art. 13, of the Constitution, or in section 8, art. 15, c. 219, of Sess. Laws of 1913, that authorizes the excise board of McCurtain county to exceed the levy fixed by chapter 195, Sess. Laws 1913. This statute, fixing a limitation upon the county levy, and not the statute making it the duty of the county excise boards to levy a tax for the maintenance of separate schools of the county, furnishes the controlling law. I can neither concur in the court's conclusion nor in the reasoning assigned in the opinion, and therefore dissent. I am authorized to say that Mr. Justice TURNER concurs in this dissent.