## MAMIE E. ROURKE et al. v. HOLMES STREET RAILWAY COMPANY et al., Appellants.

In Banc, April 13, 1914.

1. **COURT OF APPEALS: Jurisdiction: Power of Legislature to Increase.** The only power given by the amendment of 1884 to the Constitution to alter or ·change the express allotment designated by the Constitution of appellate jurisdiction between the Supreme Court and the courts of appeals was contained in the words "to increase or diminish the pecuniary limit of the jurisdiction of the courts of appeals;" and any attempt by the Legislature to confer jurisdiction on the Supreme Court on any other ground is beyond its power.

2. ——: ——: ——: **Cases of Former Decision: Double Classification.** The proviso added to Sec. 3937, R. S. 1909, by the General Assembly of 1911, in the words, "Provided that the Supreme Court shall retain and have exclusive appellate jurisdiction in any case pending in which the Supreme Court has made any decision," is unconstitutional and void as to all cases which, without it, fall within the jurisdiction of the courts of appeals. The statute without that proviso is valid, but by enacting it the Legislature exhausted its power to change the jurisdiction of a case from the Supreme Court to a court of appeals. It fixed the jurisdiction of all cases involving less than $7500 in the courts of appeals, but the proviso attempted to divide that class of cases into two classes, namely, vesting the jurisdiction of a case involving less than $7500 in a court of appeals if it was one in which the Supreme Court had not made a previous decision, and vesting the jurisdiction of a case involving less than $7500 in the Supreme Court if said court had made a previous decision or ruling therein. There is no constitutional warrant for such attempted classification and discrimination.

   *Held,* by LAMM, C. J., dissenting, with whom BROWN and FARIS, JJ., concur, that the General Assembly has unlimited power to legislate except as its power is restricted or prohibited by the Constitution, and no law should be held to be unconstitutional unless it is clearly so beyond reasonable doubt; that the Constitution expressly gives the General · Assembly power to fix appellate jurisdiction

by pecuniary limits, and there is no constitutional provision prohibiting it from fixing two pecuniary limits; that the Legislature having the power to write the pecuniary limits it necessarily has the power to fix them by metes and bounds; that the General Assembly has a constitutional power to classify if the classification is grounded in reason and is not violative of an express constitutional provision, and the classification made by the proviso is both natural and reasonable; and that the Act of 1909 contains a classification of cases involving less than $7500 in that it made no provision for the transfer of such cases "now under submission" in the Supreme Court; and that classification has been followed unquestioned.

3. ———: ———: ———: ———: ———: **Cases Under Submission: Provided for by Constitution.** The provision of the Act of 1909 excepting from transfer to the courts of appeals all cases involving less than $7500 then under submission in the Supreme Court was authorized by section 7 of the constitutional amendment of 1884, declaring that "all cases which may be pending in the Supreme Court at the time of the adoption of this amendment, which have been submitted, and which by its terms would come within the territorial jurisdiction of the Kansas City Court of Appeals, shall be certified and transferred to such court, to be heard and determined by it;" and hence that divisional classification of cases according to the pecuniary amount involved, was authorized by the Constitution itself.

Held, by LAMM, C. J., dissenting, with whom BROWN and FARIS, JJ., concur, that the said constitutional provision applied solely to the Kansas City Court of Appeals, and there is no constitutional provision for transferring cases "not under submission" to the other courts of appeals. Yet the Acts of 1901 and 1909 increasing the "pecuniary" jurisdiction of those courts required the Supreme Court to retain jurisdiction of cases falling within the pecuniary limit then under submission, and that was done; but if the majority opinion is correct, this court had jurisdiction of none of them that pertained to "the territorial appellate jurisdiction" of the St. Louis and Springfield Courts of Appeals.

4. ———: ———: ———: **Ruling of Court of Appeals.** A court of appeals has no authority to decide any case "involving the construction of the Constitution of this State," and hence any views it may have of the constitutionality of the proviso to Sec. 3937, R. S. 1909, as manifested by a transfer of a cause to this court in the belief that it is without jurisdiction, is not persuasive argument of its constitutionality. [LAMM, C. J., dissenting.]

Appeal from Jackson Circuit Court.—*Hon. Thomas J. Seehorn*, Judge.

TRANSFERRED TO KANSAS CITY COURT OF APPEALS.

*John H. Lucas* and *E. R. Morrison* for appellants.

*Yates & Mastin* for respondents; *Perry S. Rader* of counsel.

## STATEMENT.

Plaintiffs sued for injuries to their property caused by the building of an electric street railway, asking $35,000 as damages. The judgment was rendered for defendant from which plaintiffs appealed to this court (Rourke v. Railroad, 221 Mo. 46) where the judgment was reversed and the cause remanded.

Upon a retrial, plaintiff had judgment for $5000 on October, 1910, in the circuit court of Jackson county, from which judgment defendant appealed to the Kansas City Court of Appeals. The case was lodged there until that court transferred it to this court under the amendment of section 3937, Revised Statutes 1909, by the act of the Legislature of March 30, 1911, Laws of 1911, p. 190.

## OPINION.

BOND, J. (after stating the facts as above).— The question necessarily arising upon the transfer of this case to this court by the Kansas City Court of Appeals, is whether the attempted amendment by the Legislature of 1911 of section 3937 of the Revised Statutes of 1909 is constitutional? In order that the exact relation to each other of the previous act and

the proposed amendment may appear, we insert that act and the proposed amendment in full with the latter italicized.

"Section 3937. The various courts of appeals of Missouri shall have jurisdiction of appeals and writs of error in all cases where the amount in dispute, exclusive of costs, shall not exceed the sum of seventy-five hundred dollars. All cases now pending in the Supreme Court, which have not been submitted, and which by the provisions of this section come within the jurisdiction of said courts of appeals, shall be certified and transferred to the proper courts of appeals, to be heard and determined by them, *provided that the Supreme Court shall retain and have full exclusive appellate jurisdiction in any case pending in which the Supreme Court has made any decision or ruling.*"

It is conceded that this case involves no subject nor any class of cases reviewable by this court, unless appellate jurisdiction was vested in it by the terms of the italicized proviso attempted to be added to the above section of the statute by the Legislature of 1911. At the time of the judgment from which the present appeal was taken, the pecuniary limit of the jurisdiction of this court included all cases wherein the amount in dispute, exclusive of costs, exceeded the sum of $7500, which was then the maximum of the jurisdiction of the courts of appeals. [R. S. 1909, sec. 3937.] This appeal having been taken to the Kansas City Court of Appeals from judgment rendered within its territorial district, that court was vested with exclusive appellate jurisdiction of the case under the constitutional grant (Wilson v. Drainage Dist., 237 Mo. l. c. 45; Drainage & Levee Dist. v. Jamison, 176 Mo. 557), unless that power has been taken away by the act of the Legislature, passed after the lodgment of the appeal. [Laws 1911, p. 190.]

In order to determine the power of the Legislature to alter the respective jurisdictions of the Supreme Court and the Courts of Appeals, it is necessary to make a brief reference to the provisions of the Constitution creating the courts of appeals and providing for the distribution of the appellate jurisdiction between them and the Supreme Court. The Constitution of 1875 established the first court of appeals (St. Louis) and gave it territorial jurisdiction over that city and four adjoining counties, with a right to review by appeals and writs of error taken from all judgments rendered within that district and provided that such review should be final in all cases except the following; as to each of which an appeal or writ of error would lie from the decision of the St. Louis Court of Appeals to this court. The cases thus excepted were, to-wit: "1. All cases where the amount in dispute, exclusive of costs, exceeds the sum of two thousand five hundred dollars; (2) in all cases involving the construction of the Constitution of the United States and this State; (3) in all cases where the validity of a treaty or statute of or authority exercised under the United States is drawn in the question; (4) in cases involving the construction of the revenue laws of this State, or the title to any office under this State; (5) in case involving the title to real estate; (6) in cases where a county or other political subdivision of the State or any State officer is a party; (7) and in all cases of felony. [Constitution 1875, art. 6, sec. 12.]

While this plan sifted out all cases of which the St. Louis Court of Appeals had the power of final review, it left the remainder subject to be prolonged by the appeals to that court and afterwards to a final review in this court. To avoid this delay and to provide other courts of appeals with aggregate territorial jurisdiction coextensive with the State, and to relieve the crowded docket of this court, a constitutional amendment was submitted to the people and adopted

in November, 1884. The objects had in view by that amendment where carried out by the establishing of the Kansas City Court of Appeals, which was granted exclusive jurisdiction identical as to subjects and amounts with that given to the St. Louis Court of Appeals, and a division between them of the entire territory of the State.

The amendment also provided for the establishing of another court of appeals by the General Assembly and vested it with authority to make an allotment of territorial jurisdiction for such court by the changing of the limits of the territorial jurisdiction of the courts of appeals then established. And also gave the General Assembly power, to-wit, "To increase or diminish the pecuniary limit of the jurisdiction of the courts of appeals; to provide for the transfer of cases from one court of appeals to another court of appeals; to provide for the transfer of causes from a court of appeals to the Supreme Court, and to provide for the hearing and determination of such cases by the courts to which they may be transferred." [Amendment of 1884, sec. 3.]

The amendment further provided, with reference to the subject-matters of appellate jurisdiction in the courts of appeals, that the provisions of the Constitution concerning "the powers, the jurisdiction and proceedings of the St. Louis Court of Appeals, . . . . shall . . . apply to the Kansas City Court of Appeals and to such additional courts of appeals as may be by law created." [Amendment of 1884, sec. 4.] The amendment of 1884 then in express terms granted exclusive appellate jurisdiction of all other causes than those within the jurisdiction of the courts of appeals, to the Supreme Court, and provided for direct appeals and writs of error to that court. [Amendment of 1884, sec. 5.] The effect of this constitutional provision was to give the Supreme Court exclusive and direct power of review of all classes of cases mentioned

above, arising in any part of the State from which an
appeal might have been taken to it from the decision
of the St. Louis Court of Appeals under section 12,
article 6, of the Constitution of 1875. [Steffen v. The
City of St. Louis, 135 Mo. 44; State ex rel. v. Smith,
131 Mo. 176; State ex rel. v. Nortoni, 201 Mo. 1.]

The only power given by the amendment of 1884
to future legislatures to change or alter the express
allotment by the Constitution of the appellate juris-
diction between this court and the courts of appeals,
is contained in the following terms, *"To increase or
diminish the pecuniary limit of the jurisdiction of the
courts of appeals."* There is not another line or word
or syllable in the amendment of 1884 which gives any
other authority to any legislature to alter, change or
reclassify any of the subjects of appellate jurisdiction
specified and granted to this court and to the three
courts of appeals. In the performance of this single
function, the Legislature is a constitutional agent with
limited and defined authority. Within the exercise of
the power given to it, its action has all the force of a
constitutional grant, but anything done by it outside
of that authority is void, and without any binding
force on any one. What the Constitution designed
was to give the Legislature power to change the
boundary of jurisdiction between this court and courts
of appeals, so far as it was divided by the amount in
dispute in any case, by sliding the scale up or down.
For it was reasonably anticipated by the framers of
the Constitution that the growth and development of
the State would make it proper to enlarge the pe-
cuniary boundary of the courts of appeals or to adjust
the scale so that a proper proportion of jurisdiction
dependent on amount should be vested in each of the
two appellate systems.

The framers of the Constitution recognized that
the act permitted to be done by the Legislature would

257 Mo. 36

necessarily affect the right of review on the part of the Supreme Court, as well as the courts of appeals, of all cases where the appellate jurisdiction was hinged solely on the question of amount in dispute, and they were willing to entrust to the Legislature the fixing of the specific sum which should divide the jurisdiction as to all cases dependent on it. But the provision of the Constitution went no further. It gave the Legislature no more power to subdivide or classify the body of litigation thus divided and to transfer such subdivisions from one court to another, than it gave to it the right to transfer to this court the particular causes of actions on bills and notes, on open accounts, for equitable relief, to establish trusts in personal property or for torts. All of which would embrace under their respective heads homogeneous elements and would afford a more natural classification than the artificial one attempted to be formed out of the heterogenous list of cases, wherein this court might have made some prior ruling or decision either by original writs or on appeals. The only constitutional way in which the Legislature can deal with any of these distinct and separable causes of action, is by doing the particular thing delegated to it, the doing of which, would necessarily, at one and the same time, affect *all* said classes. If any other view could be maintained then it must logically follow that subsequent legislatures at different times might insert various provisos in an existing statute fixing the pecuniary limit of jurisdiction to the effect that such statute should not apply to certain of the several classes above mentioned, if the excepted class involved a dispute, for examples: exceeding one hundred dollars in one case, five dollars in a second, one thousand dollars in a third, two hundred and fifty in a fourth or one dollar in actions of tort. But it is not conceivable that the framers of the Constitution designed to put it in the power of succeeding legislatures to accomplish such

absurd results by varying at their caprice the pecu-
niary boundary between the jurisdiction of the courts
of appeals and this court as to the class to which it
should be applied. This will be evident if the matter
is viewed from another standpoint. Suppose instead
of inserting the proviso of 1911 in the valid act which
theretofore bounded the jurisdiction of the courts of
appeals (R. S. 1909, sec. 3937), the Legislature at that
time had enacted an independent law embodying the
*very* classification expressed by the proviso. Could
there be two opinions as to the unconstitutionality of
such an act? Would not its very terms disclose a
classification of causes *irrespective of amount* which
were bodily transferred from the jurisdiction of the
courts of appeals to the jurisdiction of this court? Is
it possible to point to any power given to the Legisla-
ture by any provision of the Constitution to enact such
a law altering the previous apportionment of juris-
diction by that instrument? If not, then the act would
be wholly void. But if the Legislature would have
no power to *alter* the constitutional grant of the juris-
diction by such independent act, necessarily it would
have no power to do the same thing under the guise
of a proviso embracing the same classification of cases.
What it could not do directly it could not do indirectly.
The Constitution having acted in the matter of sepa-
rating the jurisdiction of the systems of courts, the
Legislature could not thereafter change such relations,
except in the precise mode and for the precise pur-
pose pointed out by the Constitution. The proposition
is so grounded on elementary constitutional principles
as to have the force of an axiom. [State v. St. L.,
Iron Mt. & S. Railroad, 253 Mo. 642, and cases cited;
Redmond v. Railroad, 225 Mo. l. c. 731; Bd. of Comm.
Tub. Hos. Dist. v. Peter, 253 Mo. 520.] The Consti-
tution gave the Legislature no power whatever to re-
distribute the jurisdiction which it had conferred upon
the two sets of courts by reclassifying or inventing new

classifications which would subtract from the jurisdiction of one and add to the jurisdiction of the other. All it permitted the Legislature to do was to vary the money measure of the jurisdiction so as to meet changed conditions. In exercising that function, it was competent for the Legislature, as it did on two occasions, to raise the pecuniary limit, and it might hereafter lower that pecuniary limit, but having done the one or the other, its constitutional authority was *functus officio*. By giving the legislature this special and particular authority, the constitution withheld from it any further power to act in the matter and where, as in the case at bar, it attempted to act by making a new classification of subjects regardless of the amount in controversy, it necessarily ignored the very purpose for which it was given power to act at all and acted for another purpose (classification) which transcended the only authority which the Constitution gave it to interfere at all with its own previous action in the matter.

## II.

But we are not left to the conclusion as to the limitation of the power given to the Legislature under the terms in question, dictated by an analysis of their import, by process of reason and by fundamental principles of constitutional construction. For this court in Banc has directly adjudged that the Legislature can enact no law touching the jurisdiction of the courts of appeals until it can point to a specific amendment in the Constitution; for the reason that the Constitution has conferred that jurisdiction, and its grant cannot be modified or altered except it has given power so to do. [State ex rel. v. Nixon, 232 Mo. 98; State ex rel. v. Nixon, 232 Mo. 496.]

The question involved in these two cases, was the power of the Legislature, after it had allotted to the three courts of appeals their respective territorial jur-

isdiction to pass an act whereby a case which had arisen in the territory of one of the courts of appeals could be transferred for decision to another court of appeals. The Legislature assumed the power to enact such a law under the language of section 3 of the amendment of 1884. That section gave it power to transfer causes from one court of appeals to another, "and to provide for the hearing and determination of such cases by the courts to which they may be transferred." Acting under that authority the Legislature sent to the Springfield Court of Appeals the case of Houts v. Jackson, 143 Mo. App. 584, which had been tried at St. Louis and appealed after judgment for $5038 to this court, and by this court transferred to the St. Louis Court of Appeals, for that pending its submission here, the Legislature had increased the pecuniary limit of the courts of appeals to $7500 by section 3937 of the revision of 1909 (the very act to which the proviso under review was added in 1911). [Wilson v. Drainage Dist., 237 Mo. l. c. 41; Drainage Dist. v. Jamison, 176 Mo. 557.] The St. Louis Court of Appeals transferred the case to the Springfield Court of Appeals in pursuance of an act of the Legislature of 1909 (Laws 1909, p. 396), purporting to authorize such transfer. A writ of prohibition was sued out against the St. Louis Court of Appeals on the ground that the act authorizing it to transfer the cause exceeded the limit of power given to the Legislature by the above quoted words in section 3 of the amendment of 1884. Said this court in Banc, in making that writ permanent: "When the Constitution speaks on a subject, to the extent that it disposes of the matter, it ends all legislation concerning it." [State ex rel. v. Nixon, 232 Mo. l. c. 101.]

The court then recited the history of the creation of the three courts of appeals and the exclusive appellate jurisdiction granted to them by the constitutional amendment of 1884 and referred to the two

acts of the Legislature (Laws 1901, p. 107; Laws 1909,. p. 393), which increased the pecuniary limit of the jurisdiction of said courts and pointed out the con- stitutional authority of these two acts expressed in section 3 of the amendment of 1884. The opinion then took up the act in judgment and stated the argument in its support based on so much of the language of section 3 of the amendment of 1884 as referred to the transfer of causes from one court of appeals to another, and to the provision for their determination which is quoted above. To the point that those quoted words implied a power in the Legislature to confer jurisdiction by transferring a cause from the territory of one court of appeals to another, this court said: "But that is not the language of the Constitution, nor its meaning. The Constitution itself had already *declared* the jurisdiction of those courts, both as to the *amount in dispute* and as to territory, and it expressly authorized the General Assembly to alter the limit as to the amount and to alter the limits of the districts, and that was the extent to which it authorized the General Assembly to go in changing the jurisdiction." (Italics mine.) [State ex rel. v. Nixon, 232 Mo. l. c. 104; State ex rel. v. Nixon, 232 Mo. 496.]

These two decisions in Banc settled the principle that the power given to the Legislature by the terms of section 3 of the amendment of 1884 excluded the doing of any act by it which shall affect the jurisdic- tion conferred by the Constitution in any other way than the exact mode expressed by the words of that section. This principle of limitation was applied by this court in the above cases to an act of the Legis- lature which sent a case to one court of appeals which had arisen in the territory which the Legislature had allotted to another. But that principle necessarily applies with the same constitutional force to an act of the Legislature which attempts to alter the jurisdic- tion of a class of cases vested in the courts of appeals

by an act of the Legislature fixing the pecuniary limit
of jurisdiction, with which it was held to apply when
the Legislature undertook to transfer the causes in
contravention of its local division of jurisdiction.
And this conclusion *is expressly ruled in the above
quoted language* of this court in Banc.

No valid reason can be given why the Legisla-
ture is restricted by the Constitution in one case and
not in another. The courts of appeals got their ap-
pellate jurisdiction of subjects or classes of cases
within certain pecuniary limits, just as they got the
territorial jurisdiction by the act of the Legislature
in pursuance of a specific constitutional authority.
[Amendment 1884, sec. 3.] And if the Legislature,
after having acted so as to define the jurisdiction of
the courts of appeals *locally,* is without power there-
after to alter such jurisdiction, then the Legislature,
after having defined the jurisdiction of the courts of
appeals *pecuniarily,* is also without jurisdiction there-
after to pick out a class within that pecuniary limit,
and transfer that class, regardless of the amount
involved, to the Supreme Court. The prohibition in
each case is that of the Constitution, against any al-
teration of its action except for the very object and
in the exact mode which the Constitution permits its
own grant to be affected. To my mind this conclusion
rests upon irrefragable reason and the accordant de-
cisions of the Court in Banc, and upon elementary
constitutional principles.

The peculiar class of cases which would fall within
the purview of the proviso affords a powerful infer-
ence that it was one of those many instances where
our statute books have been littered with legislation
enacted at personal request or to embrace some pend-
ing suit. But whatever inspired the proviso in ques-
tion, it was a clear violation of the power to act,
given to the Legislature by section 3 of the amendment
of 1884. Wherefore, I see no escape from the con-

clusion that the sole power to review the appeal taken in this cause is constitutionally lodged in the Kansas City Court of Appeals, to which, after deciding the unconstitutionality of the amendatory proviso, the case should be sent for disposition on its merits.

## III.

Neither is it possible to uphold the proviso under review as legitimate classification by the Legislature of subjects, the jurisdiction of which it might change from the courts of appeals to this court, by calling attention to the terms of the section 3937 of the revision of 1909 which required this court .to transfer to the courts of appeals all, cases pending here *which had not been submitted,* at the time the act went into effect, and urging that this court, by complying with those terms and similar ones in the previous act, has conceded the right of the Legislature to change the jurisdiction between this court and the courts of appeals by its own classification of subjects.

To this notion it only need be answered that it loses sight of the fact that that classification was made in pursuance of a direct and express *constitutional* authority. In other words, the Legislature put in its general act defining the pecuniary limit of jurisdiction no classification of its own, but only the very requirements which the Constitution itself had imposed on this court, and therefore, this court in recognizing its duty to send to the courts of appeals all cases pending here which had not been submitted at the time of the passage of the act under which they would fall into their jurisdiction, was only obeying the mandate of the Constitution, and was not recognizing any power of classification in the Legislature. This is apparent when it is observed that the terms of the act referring to *cases not submitted* (R. S. 1909, sec. 3937) were simply a rescript of the following constitutional pro-

vision: *"Cases now pending in the Supreme Court transferred to the Kansas City Court of Appeals.* All cases which may be pending in the Supreme Court at the time of the adoption of this amendment, *which have not been submitted,* and which by its terms would come within the territorial appellate jurisdiction of the Kansas City Court of Appeals, shall be certified and transferred to such court, to be heard and determined by it." (Italics mine.) [Sec. 7, Amendment of 1884; Constitution of 1875, art. 6, sec. 19.]

Clearly this constitutional provision is of continuing force, and governs the disposition of cases not submitted when subsequent changes were constitutionally made in the relative jurisdiction of the Supreme Court and the courts of appeals. Under the guidance of and to effectuate this constitutional regulation, the Legislature inserted in its general act altering the pecuniary limit of the jurisdiction of this court and the courts of appeals, the provision requiring the transfer of cases according to the standard fixed by the act. Hence, its observance by the court was only for the reason that the Constitution, not the Legislature, made it obligatory. And it has been decided by this court that the power of the Legislature to pass any act providing for transfers of cases between the courts of appeals and to the Supreme Court, is sustainable solely on the ground of a specific authority so to do, given by the Constitution. [In re Garesche, 85 Mo. 469; Affirmed, Schuster v. Weiss, 114 Mo. 1. c. 172.]

If it could be held therefore (which we do not concede) that the Constitution designed to regulate the transfer of cases only to *one* court (the Kansas City Court of Appeals) and did not design that the same rule should govern transfers of cases similarly situated to the other courts of appeals, then under the explicit rulings of the two decisions last cited, the Legislature had no constitutional power to enact the provision in

question as far as the St. Louis and Springfield Courts of Appeals are concerned, for *they are not mentioned in the act.* And even if this court had followed the act as to said courts, that would not have supplied the lack of constitutional power in the Legislature, and necessarily would not have shown that the Legislature was making a valid classification of subjects of appellate jurisdiction between this court and the courts of appeals under any constitutional authority given to it.

It is clear that no conclusion can be drawn from the presence in the act of the language authorizing the transfer of cases "not submitted" at the time of the fixing of the pecuniary boundary of the jurisdiction of the respective courts, that the Legislature had any constitutional power to put in the same act (by the amendment of 1911), a clause divesting the courts of appeals of their jurisdiction of any case wherein this court had made a previous ruling or decision.

What the Constitution intended and expressly provided was, that the three courts of appeals should have the same jurisdiction as to subjects of review, exert the same judicial powers, entertain the same proceedings, and be governed by the same rules; and this purpose is expressly set forth in the words of the amendment of 1884. [Amendment 1884, sec. 4.]

But besides all this, there is not even an attempt at classification by the use of the words "not submitted." All that was intended by them was to *fix the time* when the law dividing the jurisdictions should take effect. The purpose being to fix a time *before* the decision of the cases to be effected, and hence, the time adopted was a period when a decision had not been made.

The whole effort to build an argument of power to classify from the use of these terms, is based on two erroneous assumptions. First, the assumption of a power which did not exist; second, the assumption

of a classification which *was not made*. From these incorrect premises no correct conclusion can be deduced of constitutional power in the Legislature to amend the act of 1909 as attempted by the proviso inserted in 1911.

## IV.

It is hardly necessary to refer to the suggestion as to the "persuasiveness" of the ruling of the Kansas City Court of Appeals in sending this case here after the enactment of the proviso by the Legislature of 1911. The Kansas City Court of Appeals had no power to decide any case "involving the construction of the Constitution of this State." The amendatory act of 1911 presented on its face that question. The Kansas City Court of Appeals therefore, with perfect propriety, transferred the case to this court to the end that the constitutionality of the act should be first considered by the only court permitted to solve that question under our judicial system. The Kansas City Court of Appeals withheld any expression of its own views as to the validity of the act, but *read* its terms of attempted classification of cases irrespective of the limit of its own jurisdiction and promptly transmitted the record to this court as the only authority which could decide the question presented by the terms of the act. The mere action of sending to this court a case falling within the letter of the new act, could not in the nature of the things afford any greater persuasive authority for a holding by us that the act was constitutional, than we could have from a mere *reading* of the act itself.

## V.

It is finally suggested that the question of the constitutionality of the proviso was "settled" by the ruling of Curtis v. Sexton, 252 Mo. 221. A brief

reference to that opinion will demonstrate that it made *no ruling whatever* on the ground of attack directed at the act of 1911 which is now called to the attention of this court. The point that the Legislature transcended the constitutional limit of its power to act only on the subjects or classes of the appellate jurisdiction of the courts of appeals so as *"to increase* or diminish the amount" upon which their jurisdiction was predicated, by altering it with respect to the entire subject-matter of that jurisdiction, was not raised nor called to the attention of the court nor passed upon in that case, nor even referred to in the remotest way by anything that was said in that opinion. This is proven by the following extract from that opinion:

"The constitutional objections urged are those relating to the passage of local laws, and laws touching upon 'class legislation.' No specifications are furnished us by counsel showing wherein a provision of this sort violates the law forbidding class legislation, nor do we know of any such reason. The law applies to all pending cases, both those which are here and those which shall hereafter be appealed to this court wherein this court shall prior to the passage of the act, have made some decision and ruling. We rule this point against defendant." [Curtis v. Sexton, 252 Mo. l. c. 253.]

That case not only did not settle the point now under review, but it is *not even persuasive* authority, since it gives no expression whatever on the question which now has arisen for judgment, but which was neither in judgment nor touched upon there. There is no exception to the doctrine established in this State and elsewhere, that where a prior decision does not rule upon or refer to a ground of attack made upon an act of the Legislature in a subsequent case, the former decision is without any authority whatever in the decision of the later case. [Koerner v. St. Louis Car Co., 209 Mo. l. c. 156; State ex rel. v. St. Louis,

241 Mo. 1. c. 239.] But a careful analysis of the ruling in Curtis v. Sexton will disclose that what, in effect, was held there, to-wit, that the act of 1911 constructed a *class of cases,* furnishes a conclusive reason why the act must fall under the present constitutional attack. This is so because the Legislature had no constitutional power to *classify,* its only authority being to change the pecuniary limit of jurisdiction. And it is wholly illogical to say, that the Legislature was acting in accordance with a power to change the amount in dispute when it left *that matter* entirely out of view and made the *class of cases* sought to be created, depend for their existence solely upon the factitious circumstance that a prior ruling or decision had been made in them at some earlier stage by this court. In other words the Legislature could not have acted in conformity with the Constitution while *ignoring the only object* for which it authorized the lawmakers to act. Hence it follows that its attempt to withdraw jurisdiction from the court of appeals of a class of cases was devoid of any constitutional authority and its act in so doing is patently void.

## VI.

It is a matter of the greatest importance to the people of this State that the courts of appeals shall be allowed to exercise the jurisdiction expressly conferred on them by the Constitution as amended. This court has not an atom of power to withdraw any jurisdiction of cases granted exclusively to the courts of appeals by the Constitution. This court is itself a creature of the Constitution and cannot without usurpation annul the very authority to which it owes its being It is the pinnacle of the judicial system devised by the Constitution to administer the law, and to enforce its supremacy.

It has been shown that the lawmaking body attempted, by the proviso to a previous valid act, to

create an unrelated and artificial class of cases which should be transferred without reference to any constitutional authority so to do, from the subject-matter of appellate jurisdiction of the courts of appeals. This appears on the face of the act and by any possible construction which can be given to it. It is a self-evident proposition that the Legislature was powerless to do this, and that this court is equally powerless to validate its attempt so to do. The commands and limitations of the Constitution may be altered or amended by the people in the exercise of the powers reserved in that instrument, but until that is done, they are beyond the control of the courts or the Legislature, for neither of them are framers of constitutions.

This court is content to move in the orbit prescribed for it by the instrument to which it owes its creation. If it leaves that course, the whole system of government is at once deranged by the infraction of the laws upon which it is founded and by which it is regulated and controlled. That no other tribunal can coerce or restrain its action is the moral reason which makes self-restraint an imperative duty. Though possessed of unchecked power, this court will steadily pursue the paramount behests of right action, and thus refute detraction and silence "envious tongues" uttering the misjudgments of the judiciary, which distort the popular fancy of the hour.

We accordingly hold that the proviso attempted to be inserted by the Legislature in 1911 (Laws 1911, p. 190) is void, because it is beyond the scope of the power conferred upon the Legislature by the Constitution as amended in 1884. This result does not affect the validity of the act of 1909 (R. S. 1909, sec. 3937) which established the present criterion of jurisdiction of the courts of appeals in respect to the amount in dispute. For that or any similar future enactment is within the just authority given the Legislature under the present Constitution.

It is evident that the determination of the present appeal in the case at bar is vested in the Kansas City Court of Appeals and the cause is hereby transferred to that court. *Woodson, Graves* and *Walker, JJ.,* concur; *Lamm, C. J.,* dissents in opinion filed in which *Brown* and *Faris, JJ.,* join.

## DISSENTING OPINION.

LAMM, C. J.—This cause, having been heretofore in this court, on a new appeal was sent to the Kansas City Court of Appeals and by that court was transferred to this court because of a statute enacted in 1911, infra.

A preliminary question, *viz.,* one of jurisdiction, was raised by the court *sua sponte* and the case is made to break on that. To that result I cannot agree, because:

The Constitution (sec. 3 of the Amendment of 1884) reads:

"The General Assembly shall have power by law to create one additional court of appeals, with a new district therefor; to change the limits of the appellate districts, and the names of the courts of appeals, designating the districts by numbers or otherwise; to change the time of holding the terms of said courts; to increase or diminish the pecuniary limit of the jurisdiction of the courts of appeals; to provide for the transfer of cases from one court of appeals to another court of appeals; to provide for the transfer of cases from a court of appeals to the Supreme Court, and to provide for the hearing and determination of such cases by the courts to which they may be transferred."

Under that grant of power the General Assembly, having in 1901 and 1909 enacted statutes, finally in 1911 (Laws 1911, p. 190) amended section 3937, Revised Statutes 1909, so as to read as follows:

"The various courts of appeals of Missouri shall have jurisdiction of appeals and writs of error in all cases where the amount in dispute, exclusive of costs, shall not exceed the sum of seventy-five hundred dollars. All cases now pending in the Supreme Court, which have not been submitted, and which by the provisions of this section come within the jurisdiction of said courts of appeals, shall be certified and transferred to the proper courts of appeals, to be heard and determined by them, *provided that the Supreme Court shall retain and have full exclusive appellate jurisdiction in any case pending in which the Supreme Court has made any decision or ruling.*"

The change made by the amendment of 1911 was the addition of the italicized proviso. If that proviso is constitutional, we have jurisdiction—otherwise, otherwise.

I am of opinion the proviso stands as a valid exercise of legislative power, because:

(a) We are strictly admonished by canonized rules that courts approach the adjudication of the unconstitutionality of an act of the law-making power with caution and gravity. So, they must resolve all doubts in favor of such act. So, before such act is declared invalid it must be shown to be so clearly bad that its vice is put beyond any reasonable doubt. Then, too, every reasonable intendment must be allowed in favor of the act, so that if possible it may stand, not perish. Every allowable act, art or part of judicial power, resting in reason, must be called into play to uphold the act. To that end, if a certain construction brings the act under the ban of unconstitutionality and any other construction within reason is permissible, taking it from under such ban, we are bound to be astute in accepting that construction; for the most pregnant and solemn reasons underlie the foregoing doctrines. It is in the light of those doctrines, and not otherwise, the question must be ruled.

[In re Board of Com'rs Tuberculosis Hosp. Dist. v. Peter, Intervenor, 253 Mo. 520.]

It is said the life story of a chicken is told in the phrase, "from egg to ax." It will be seen from the foregoing view that such crisp and dramatic summary is *mal apropos* in dealing with laws, and yet—but let the playful conceit in mind go unsaid in order to pick up the thread of sober judicial exposition.

(b) By the 1884 amendment to the Constitution the "pecuniary limit" of appellate jurisdiction was dropped as a constitutional provision and the Legislature was granted power to prescribe such limit. Up to that time the Constitution itself prescribed the pecuniary limit. [Constitution, sec. 12, art. 6.] With the "pecuniary limit" thus put by that amendment within legislative regulation and released from constitutional regulation, the Legislature took up the subject-matter and passed the proviso. When read with the act of which it is a part, the proviso deals with the pecuniary limit of jurisdiction as its motive and end. If anything else is drawn within the line of the enactment (which I do not admit) it is only incidentally and in contribution to the principal motive and end and cannot furnish a constitutional test. In effect the statute means the courts of appeal shall have jurisdiction, with reference to pecuniary amount, in all cases where the amount in dispute does not exceed seventy-five hundred dollars, except in cases pending in the Supreme Court or in the circuit court, in which the Supreme Court has made a decision or ruling, and, as to them, courts of appeal shall not have jurisdiction, but the Supreme Court shall have jurisdiction *in any amount*. Clearly, the Legislature by that act did not undertake to overleap constitutional barriers and foist jurisdiction upon this court of any subject-matter except the one relating to pecuniary limit. Mark, it behooves us to see and admit, I think,

that the act does not undertake to alter, affect or in aught deal with the express and enumerated constitutional subjects of jurisdiction lying outside of pecuniary limit. It leaves untouched cases under our constitutional jurisdiction, to-wit, those involving title to land, revenue, constitutional or Federal questions, title to office under this State, or cases where a county is a party. [Constitution, sec. 12, art. 6.] That is to say, cases of that ilk come here automatically whether we have once ruled thereon, or whether we have not theretofore ruled thereon. It establishes a pecuniary limit with an exception to the effect that in a case in which we have ruled or made a decision the seventy-five hundred dollar pecuniary limit, ordained by the principal statute, is not the minimum pecuniary limit of our jurisdiction. But that, as to such case, there is another pecuniary limit, to-wit, any amount whatever. The statute is susceptible of that construction and, if necessary, we are bound to give it that construction, rather than another, to sustain it as valid rather than expand its meaning so as to impinge upon the other heads of our jurisdiction. It is a most singular fact that while the Constitution gives this court appellate jurisdiction in general language (sec. 2, art. 6) and superintending control and power to issue certain original writs (sec. 3, art. 6) yet it nowhere parcels out appellate jurisdiction between this court and the courts of appeal except by *a side stroke and by indirection*. In delimitating our jurisdiction on appeal in material features and to make the Constitution a working instrument, we have been forced to do so by inference, by judicial construction of a pronounced character in dealing with section 12, article 6 (*q. v.*)—a section directed primarily to appeals from the St. Louis Court of Appeals to this court, a scheme now abandoned. I mention this to show how much our jurisdiction owes to the exercise of judicial construc-

tion, and we ought not to hesitate.to use it in perfecting our jurisdiction.

(c) Again, all legislative power lies in the General Assembly of Missouri except in so far as it be directly or by inexorable implication forbidden by the State or Federal Constitution. So much, I take it, is a truism in constitutional law. [State ex rel. v. Sheppard, 192 Mo. l. c. 506 et seq.] The Federal Constitution *grants* power to Congress to legislate, the State Constitution *leaves* to the State Legislature all legislative power it does not take away. Giving full force to that principle,. a vital and main question springs spontaneously, to-wit: Where is the constitutional provision *prohibiting* the General Assembly from fixing two or more pecuniary limits? Who can put his finger on it in the Constitution? Nay, why should it be there? Is not the law-maker authorized by the Constitution to *write the pecuniary limits*—to prescribe them by metes and bounds? With the constitutional hand in that regard lifted, and the legislative hand laid on, was it not intended that the law-maker should have leave to act reasonably and deal with it with the usual full-fledged legislative power, to-wit, *a power to classify?* When that question is answered, yes, as it should be, I respectfully submit, all trouble and doubt disappear. In dealing with the subject-matter of pecuniary limits the lawmaker might not make an unnatural or unreasonable classification, and thus bring himself within the interdiction of the Constitution against special or class legislation. Nor might he cut away from us our jurisdiction of a subject-matter plainly set down in the Constitution. All that is beyond his power. But in this instance he has done neither the one nor the other. As already pointed out, the constitutional limits of our jurisdiction on other matters are left untouched by the proviso, and it has primary reference to the subject-matter of pecuniary limit only, with, what I conceive to be, a con-

stitutional, *i. e.,* a reasonable and natural classification. Is not *classification* a favorite legislative scheme which we constantly sustain as constitutional if grounded in reason? Clearly so, and that theory sustains the act of 1911, to my mind.

(d)   We may with profit consider the terms of section 3937 before it was amended by the 1911 proviso. It will be found to deal itself with a classification. Are *all* cases under the Act of 1909, where less than seventy-five hundred dollars are in dispute, to be transferred to the courts of appeal? No. Those "which have been submitted," are exempted. Admit that the classification is small or rudimentary, yet it is there plainly put in the law of 1909. Is *that* exemption, also, unconstitutional as outside of legislative power? If so we have violated the Constitution many times; for we retained jurisdiction of all cases of that class existing at the time the original act went into effect in 1909.

Going back a little further, in 1901 (Laws 1901, p. 107), a statute was enacted with the same classification or exemption in pecuniary limit as that of 1909, to-wit, the "under submission" exemption, and we accepted and acted on it as valid. Is this long continued and practical construction worthless as a constitutional guide? I do not so understand the rule.

But the majority opinion, inadvertently I think, seeks to parry the force of the invoked, the practical and long existing construction, whereby that rudimentary classification anent pecuniary amount was allowed as valid. This by pointing to a provision of the Constitution said to permit it. Let us look to that. The provision is (sec. 7, art. 6):

"*Cases now pending in Supreme Court transferred to Kansas City Court of Appeals.*—All cases which may be pending in the Supreme Court at the time of the adoption of this amendment, which have not been submitted, and which by its terms would come

within the territorial appellate jurisdiction of the Kansas City Court of Appeals, shall be certified and transferred to such court, to be heard and determined by it.''

It will be observed that such provision relates solely to the Kansas City Court of Appeals and establishes a *modus transferendi* for sending cases from this court to that. There is no such constitutional provision relating to any other court of appeals and holding in this court cases that are ''under submission.'' Despite that limited and preclusive grant of power, the Legislature passed a general law, to-wit, section 3937, supra, including *all* courts of appeals.

It is on that *statutory* warrant and not otherwise that we have been acting from time to time in sending only those cases ''not under submission'' to the St. Louis Court of Appeals and the Springfield Court of Appeals and in retaining those under submission. So that it is just to say, as we have said, that we have allowed the idea of classification to obtain on the subject-matter of pecuniary limit of jurisdiction. If we were right in so doing, then why is this dissent not justified?

(e) Moreover, the identical question has been ruled and is not open as *res integra*. In Curtis v. Sexton, 252 Mo. 221, the question of our jurisdiction was raised by counsel. It hinged upon the validity of the proviso in question. In that case we assumed jurisdiction. Handed over to us by the Kansas City Court of Appeals on the strength of the proviso, we sustained the constitutionality of the law by deciding the case and ruling the point agreeably to the ruling proposed in this dissenting opinion. It is clear that if we have no jurisdiction of the present case, then we had no jurisdiction in the Curtis-Sexton case, and all the weighty and far-reaching matter there adjudicated tumbles down like a house of cards, as declared and

decided in a case in which we had no jurisdiction to say anything at all. *Stare decisis.*

So, the Kansas City Court of Appeals construed the proviso in the Act of 1911 to give us jurisdiction in the instant case and in the Curtis-Sexton case. Is not the holding of that learned court, though not put on constitutional grounds (as it could not be), at least persuasive?

The act is too young to permit of many precedents in construction, but such as exist are worth while and run in favor of the validity of the law.

(f) It has been argued that, conceding the doctrine of classification as applicable, yet the classification attempted is unnatural and unreasonable. But is it? The division of cases into (1) those that are pending in or have been to this court and are now below, and in which we have made a decision or a ruling, and (2) those in which such condition does not arise, is, to my mind, natural, logical and entirely wise. It prevents mischievous confusion and the perpetuation of error "broadening down from precedent to precedent." It is in no just constitutional sense class or special legislation as denounced in cases expounding the Constitution. Take a case to illustrate: We reverse and remand a case for a new trial. Such new trial is had. In the meantime the Legislature has changed the pecuniary limit of jurisdiction, or the new judgment falls below the old one and thus affects jurisdiction, absent the proviso. In such case, under the former law, the new appeal went to one of the courts of appeal. See what happens? Automatically, by mandate of the Constitution, the court of appeals is bound, *nolens volens,* by our former decision, right or wrong, and the door of judicial investigation is forever closed on that question (despite the mischief) until such time, withal, as another case reaches us carrying the point. Such is no fanciful hypothesis. It has arisen over and over. It is precisely what

would have happened in Bagnell Timber Company v.
Missouri, Kansas and Texas Railroad Company, 242
Mo. 11. The several courts of appeal were following
our first erroneous opinion in that case on a vital prin-
ciple of law of everyday application. [180 Mo. 420.]
They were obliged to do so by the Constitution and
would have continued to do so had it not happened,
fortunately, that the case reached this court on its
second appeal, when we corrected our own error in
the same case.

More could be said in favor of the justness, the
wisdom, the constitutionality of the proviso if need
called or time allowed.

The statute as it stands prescribes a general rule
of jurisdiction on amount, disposing of all cases, and
the classification made by the proviso seems to me to
be just and constitutional.

It has been suggested that the use of the word
"or" precludes the construction we have put upon
the Constitution and statute. The argument, as ad-
vanced, runs thus: By using the disjunctive conjunc-
tion "or" in the Constitution, power is left to the
Legislature to increase "or" diminish the pecuniary
limit *but not to do both at one stroke.* But I conceive
that to be too narrow and precarious a point upon
which to rule the unconstitutionality of the law in
question.

Is it likely that a Constitution-maker, intent on
large themes, would intend to make a grave consti-
tutional provision turn on "or," "and," "a," "the,"
*et hoc genus omne?* That would be, by judicial con-
struction, to turn a mere linguistic pin prick into the
stroke of a hammer (St. Louis v. Handlan, 242 Mo.
l. c. 94) or make a mountain out of a mole hill.

It is familiar doctrine that where an absurd re-
sult will be prevented or where another construction
is useful to further a legislative intent or to give a
constitutional provision full and rounded vigor in

order to cover its true and whole intendment the word
"or" may be read "and" and *vice versa;* that is fre-
quently done. [State v. Bulling, 100 Mo. l. c. 93; 29
Cyc. 1505 et seq., where many authorities are assem-
bled on the proposition.]

Deeming it an unhappy circumstance that the
point has to be ruled without the aid of brief or argu-
ment by counsel, for the point is not made by them,
but is sprung *ex mero motu* by the court, I have given
my views on this matter, one of pronounced impor-
tance. Those views compel me to dissent and that I
do. *Brown* and *Faris, JJ.,* join me herein.