PHILIP J. FLYNN *vs.* BOSTON AND ALBANY RAILROAD COMPANY.

Hampden.   September 28, 1897. — October 20, 1897.

Present: ALLEN, HOLMES, KNOWLTON, MORTON, & BARKER, JJ.

*Personal Injuries — Due Care — Law and Fact — Action — Railroad — Giving of Signals by Whistle — Negligence.*

In an action against a railroad corporation for injuries occasioned to the plaintiff's person and property by the alleged negligence of the defendant's servants in blowing the whistle on a locomotive engine improperly, it appeared that the plaintiff, at the time of the accident, was employed with his horse and cart in carrying dirt from an embankment to a highway running parallel to and about seventy feet distant from the defendant's railroad; that he had just dumped a load of dirt when the whistle on the engine of a gravel train which was standing on the railroad was blown, frightening the plaintiff's horse, which started to run, and he, after attempting to hold him, was thrown against a post and injured; and that the horse had worked there for two weeks, and the plaintiff's witnesses testified that the horse had not been afraid of the whistling before this occasion. *Held,* that there was evidence that the plaintiff was in the exercise of due care, and that the horse was safe and gentle.

Although the statements of some of the witnesses at a trial as to the duration of the blowing of whistles on a locomotive engine appear incredible, the jury may think them to be exaggerations rather than intentional misrepresentations, and it is for them to draw such inferences, and to give to the testimony such weight, as they think the appearance of the witnesses and the circumstances disclosed by the evidence fairly justify.

A railroad corporation has the right to establish such signals, in addition to those required by law at crossings, as are reasonable and proper for the operation of its railroad, and if an injury to a person at work with a horse and cart upon an

adjacent highway happens in consequence of the giving of such signals by the servants of the corporation under circumstances which justified them in so doing, the injured person has no right of recovery against the corporation.

A signal established by a railroad corporation may be reasonable and proper in itself, and yet the circumstances may be such that it would be negligence on the part of the servants of the corporation to use it, and due care might require that the object to be accomplished by the giving of it should be reached in some other manner.

If persons are at work with horses in close proximity to a railroad upon which a gravel train is standing, and they are seen by the employees upon the train, it is a question for the jury, in an action against the corporation for injuries caused by one of the horses becoming frightened by the alleged careless blowing of the whistle on the engine, whether or not it was negligence on the part of the engineer to give at this time by the whistle certain signals which had been established by the corporation.

TORT, for injuries occasioned to the plaintiff's person and property by the alleged negligence of the defendant's servants in blowing the whistle on a locomotive engine " in an unsafe, improper, and careless manner." Trial in the Superior Court, before *Hopkins,* J., who allowed a bill of exceptions, in substance as follows.

It appeared that on May 18, 1895, the plaintiff was employed, with his horse and cart, by the town of Westfield on the " State road," so called, between Westfield and Mittineague; that his work consisted in filling his cart with dirt at an embankment and dumping it on the highway, which was parallel to and about seventy feet distant from the defendant's railroad at this point; that the plaintiff's horse was frightened by whistles blown on a locomotive engine, and started to run, and the plaintiff, in trying to control him, was thrown against a post and received the injuries complained of ; and that the horse fell, and died soon after.

The plaintiff introduced evidence tending to show that he had taken out his second load and had dumped it ; that a gravel train was standing on the defendant's railroad, and that a whistle was blown four times, giving three sharp blasts and then a long one, two of the witnesses testifying that the whistling lasted about five minutes, and another that it lasted ten or twelve minutes ; that the men working on the way, of whom there were seven or eight besides the plaintiff, were seen by the train hands when the whistle was blown ; and that the plaintiff's horse had worked there for two weeks, and he had not been afraid of the whistling before this occasion.

The defendant introduced evidence tending to show that the train in question consisted of an engine and fifty cars loaded with gravel which was dumped at a certain point; that the four whistles were short, sharp blasts lasting only a few seconds, and given, in accordance with a rule established by the corporation, to call in a brakeman who had been left at some distance from the place of unloading with a flag to guard the track from approaching trains; that the order to blow the whistle was given by the conductor to the engineer, and the train started at once; and that the men working on the highway had not been seen before the accident to the plaintiff.

At the close of the evidence, the defendant requested the judge to give the following rulings: " 1. Upon the whole evidence, and the pleadings, the plaintiff cannot recover. 2. There is no sufficient evidence that the engineer negligently or heedlessly blew the whistle, and the plaintiff cannot recover. 3. There is no sufficient evidence that the plaintiff was in the exercise of due care, and he cannot recover. 4. It was no part of the duty of the engineer on the train to be on the lookout for the plaintiff or the other men working on the highway. 5. The plaintiff cannot recover other than the value of his horse because of any long continued blowing of the whistle after the horse got away from him."

The judge refused to give these rulings, and, among other things, instructed the jury as follows:

" Now, what were the rights of the parties at the time with reference to one another? They were strangers, as you see, to one another, that is, there was no contractual relation between them. The plaintiff was not in the employ of the defendant, and so owed the defendant no duty as an employee, and the corporation owed the plaintiff no duty as his master. They were precisely in the same condition as if one of you were passing over some highway, driving a horse, for pleasure or upon business in which you might be engaged, and the rights of the plaintiff are to be determined by the same rules of law that would have to be applied in case one of you had an injury in passing over that way through a fright caused his horse by the blowing of a whistle. Now, the defendant corporation had a right to run this gravel train upon its road. It had a right to run it ac·

cording to such rules as it might adopt, provided those rules were reasonable and proper, having reference to the conditions under which it was occupying its road-bed and with regard to the rights of all other persons upon it in any employment or adjacent to it ; so it would be entirely competent for the railroad corporation to establish rules which would govern the action of its servants in the way and manner in which the defendant's witnesses now say their conduct was governed. . . .

" Now, it is obvious that necessarily, in the operation of trains upon railroads, many things will take place calculated to cause fright to horses, and for that matter to people, — disturbance, annoyance to people. Smoke escapes, there is a vibration of passing trains which communicates itself to buildings near by, there is the noise of the bell, and the noise of the whistle, all of which are calculated, perhaps, to cause annoyance and sometimes fright, and the danger, of course, of disturbance and of fright, increases with the proximity of the person to be affected by it, so that where we get a railroad and a highway running parallel and near by, there must be causes of fright and disturbance to persons and animals passing along upon the highway, and for any injury that results from the fright that is caused in that way no recovery can be had against the railroad, because it is only doing that which it is organized and incorporated to do, which public policy authorizes it to do, desires to have done, and therefore an injury which results solely because of fright which is brought about by noises and disturbances caused by passing trains is not in and of itself a cause of action for which recovery can be had against the railroad corporation causing it, but it is only in the event that that which is complained of results from some wrongful, negligent act on the part of the defendant corporation that recovery can be had. . . .

" The plaintiff comes with the burden upon him of proving what he alleges, and the allegation which he makes is that the negligent act consisted of unsafe, improper, and careless whistling. That is the negligent thing that is complained of, so that you see the question of fact is a very simple one. He does not claim that they had not a right to whistle. That is admitted, and he puts his case on the proposition that the act which wrought him the injury was a careless, negligent, and improper

one.    Did the defendant's servant, the engine man, carelessly
and negligently blow the whistle upon that occasion ?    That is
a question of fact.    Now, I say to you in the outset that if it was
a prudent and proper thing to leave the brakeman in the rear to
guard that east bound track until the train was removed from it,
and if under those circumstances it was a prudent and proper
thing to establish a signal to give him notice of the fact, and
that the signal which was established, namely, four sharp short
whistles, was, in your judgment, a proper signal to give, then
the giving of such a signal would not be a negligent blowing of
the whistle, and if that was all that was done, and if it fright-
ened the horse, no matter how severe the fright and how dis-
tressing it became ultimately to the horse or man or both, then
the defendant cannot be said to have performed the negligent
act complained of, and this plaintiff would have no right of re-
covery.    It would be an accident.    The misfortune would have
to lie where it fell upon the unfortunate victim of it ; but he
puts his case upon the proposition that there was a different
blowing of the whistle.    He says that he heard three blasts of
the locomotive whistle, and they startled his horse, and the du-
ration of them he characterizes as four or five minutes for those
three blasts.    It is not for me to say that that is absurd.    It is
for you to consider whether that can be so or not, in the nature
of things.    Counsel say that, of course, he is mistaken as to the
time.    That is a suggestion for you to take into consideration ;
but he says there were three short blasts of the whistle, as dis-
tinguishing the blasts from the blast which followed ; then he
says the fright was completed by the fourth blast of the whistle,
which he says was in duration ten or twelve minutes.    The same
remark that I made with reference to the first statement as to
time, you recall here, and in the nature of things, can it be pos-
sible that there should be a ten or twelve minutes' blast of the
whistle at that time ?    Well, if you should find that there were
three blasts which, in their duration, blasts and intervals, occu-
pied four or five minutes, and that they were followed by a blast
which in duration occupied ten or twelve minutes, what would
you say about such whistling as that ?    Was it reasonably neces-
sary to do that in order to warn and call the brakeman who is
detached to guard that track ?    It is not for me to say that that

would be a careless, negligent use of the whistle. It is not for me to say that the plaintiff commits himself to the proposition that it did take as long as that. I only recall your attention to the evidence in which he states the time in that way. Now, what is the story of the defendant, what is the nature of the evidence upon which it bases its claim? The claim is that the blasts which were given were four in number, and that they were determined by the rules which have been put before you, which establishes that signal for calling in a brakeman. How were they given? It is said by those who have spoken to it that they occupied, blasts and intervals, about four seconds, a short space of time, so that, according to the claim of the defendant, the signal was short, sharp, clear, and decisive, occupying but a brief space of time. Now, if you should find that it occupied a short space of time, and that it took place under such circumstances, then it is, of course, a question for you whether that was a negligent use of the whistle under the circumstances. . . .

" Now, it is said by the plaintiff in his testimony, and it is argued to you by counsel, that the servants of the defendant saw the plaintiff as he was crossing the road, — were looking at him. It is said on the part of the defendant's servants that they did not see or observe him. Now, the mere fact that they saw him, if it be a fact, does not necessarily sustain the proposition that they were negligent in the act of whistling, for reasons I have already given. They would have a right to whistle, although they saw a man passing on the highway, but it is a fact that you are to take into consideration whether or not they did so. Now, if the engineer saw this man upon the highway, and then wilfully, maliciously, knowing that the act would cause fright, blew that whistle, and blew it for the purpose of causing fright, this defendant was not liable for the engineer's act, because it would not be what we know as a negligent act on the part of the defendant's servants, but a wilful act on his part, contrary to the rules of the corporation, and for the wilful act of the servant under those circumstances the master is not responsible. . . .

" The plaintiff must prove affirmatively the fact alleged of negligence. If he fails of that, he fails of a right of recovery. If he sustains that position, then he must also prove that he him-

self was in the exercise of due care. Counsel have addressed you upon that question, upon both sides. I can add little to what has been said about it. I will say this, however, that his care must extend not only to his own person, but to his own property, so that if he had a horse that was unfamiliar with the disturbing noises that surrounded him there, and which, when brought in contact with them, was likely to become unmanageable, and did become unmanageable, then, inasmuch as the care of the owner extended to his property, there would be imputed to the owner negligence for the use of such an animal under such circumstances and in such a place, or there might be. . . .

" If he was in the exercise of due care, and the defendant was wanting in care, then it is a question of compensation for that injury. He says he lost his horse of a certain value. If, through the negligent act of the defendant, he lost his horse, then he is entitled to the fair market value of the horse at the time. He says he received certain injuries to his person which caused him to lose a certain amount of time, and time is money, and caused him pain and suffering, which he says permanently interfered with the use of one of his legs. You heard the evidence upon the one side and the other, what the chances are for ultimate recovery, how far he has progressed towards recovery, what the nature and extent of the pain have been, and I cannot add anything with reference to the measure of damages to that which so often I have stated to you in cases that have been before you, — reasonable compensation, estimated by your good judgment and knowledge of affairs, and the way in which men are accustomed to suffer by injury to their person."

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*W. H. Brooks & W. Hamilton*, for the defendant.

*J. B. Carroll & W. H. McClintock*, for the plaintiff.

MORTON, J. There was evidence that the plaintiff was in the exercise of due care. He was where he had a right to be, and was doing in the usual manner the work which he had been hired to do. There was also evidence that the horse was safe and gentle. We cannot say that there was not some evidence that the whistle was blown carelessly by being unduly prolonged. Some of the statements made by some of the plain-

tiff's witnesses are incredible.   But the jury may have thought that they were exaggerations rather than intentional misrepresentations, and it was for them to draw such inferences and to give to the testimony such weight as they thought the appearance of the witnesses, and the circumstances disclosed by the evidence fairly justified.

We think that there was no error in the instructions which were given or in the refusal to give the rulings which were requested by the defendant.   In addition to those required by law at crossings, the defendant had the right to establish such signals as were reasonable and proper for the operation of its road, and if the injury and loss to the plaintiff happened in consequence of the giving of such signals by the servants of the defendant under circumstances which justified them in so doing, then, as the court instructed the jury, the plaintiff had no right of recovery.   *Favor* v. *Boston & Lowell Railroad,* 114 Mass. 350. *Lamb* v. *Old Colony Railroad,* 140 Mass. 79.   *Howard* v. *Union Freight Railroad,* 156 Mass. 159.   But a signal may be reasonable and proper in itself, and yet the circumstances may be such that it would be negligence on the part of the defendant's servants to use it, and due care might require that the object to be accomplished by the giving of it should be reached in some other manner.   It is not for the defendant to establish a signal, however reasonable and proper in itself, and say to its servants that it may be given under any and all circumstances, regardless of consequences.   The engineer and conductor were not bound before giving the signal to look and see if there were any persons on the highway, and the defendant was not liable for the damages which a traveller or a teamster on a highway in close proximity to the railroad might sustain in consequence of his horse being frightened by the usual and ordinary noises or appearances which attended the running of trains.   But the liability of horses to be frightened by unusual noises is well understood, and there was evidence tending to show that the plaintiff and others were at work with horses and teams only a short distance from the place where the gravel train stood, and that the engineer and others on the train knew of this, and saw the men and teams when the whistle was blown.   Under such circumstances, we think that it was rightly left to the jury

to say whether or not that was negligence on the part of the engineer in giving the signals which were given, even though they were the signals established by the defendant. *Chicago, Burlington, & Quincy Railroad* v. *Yorty*, 158 Ill. 321. We do not understand the defendant to contend that an undue prolongation of the whistling on the part of the engineer would not be negligence, or that it would not be liable to the plaintiff for the damages caused thereby.              *Exceptions overruled.*