## WILLIAM J. PHELAN, Respondent, v. GRANITE BITUMINOUS PAVING COMPANY, Appellant.

### St. Louis Court of Appeals, June 2, 1914.

1. **TRIAL PRACTICE: Questions for Jury.** When the evidence is conflicting, the question is for the jury.

2. **NEGLIGENCE: Unusual Noises: Fightening Animals.** The unusual use of a steam whistle on a steam roller close to travelers on a city street, whereby horses are frightened and human beings injured, is negligence.

3. ———: ———: ———: **Sufficiency of Evidence.** In an action for injuries caused by plaintiff's horse becoming frightened at the blowing of a whistle on a steam roller, evidence

*held* sufficient to warrant the submission of the case to the jury.

4. **APPELLATE PRACTICE: Law of Case.** A decision of the Supreme Court concerning the effect of certain evidence is the law of the case on a subsequent appeal, after retrial, prosecuted to a Court of Appeals.

5. **INSTRUCTIONS: Assumption of Facts.** In an action for injuries caused by plaintiff's horse becoming frightened at the blowing of a whistle on a steam roller, an instruction that if defendant's servant in charge of the roller negligently blew the whistle, and plaintiff's horse, as a direct result "of said steam whistle so negligently blown," became frightened and unmanageable and caused the injuries, and if the blowing of the whistle, if any, was unnecessary in the performance of the work in which defendant was engaged, etc., the jury should find for plaintiff, was not vulnerable to the objection that the quoted words assumed that the whistle was blown; such words being so closely connected with the other parts of the instruction that the jury must have understood that the controverted question of fact as to whether or not the whistle was blown was submitted to them to determine.

6. ————: **Construction.** In construing an instruction to determine whether or not it is erroneous, it should be viewed as a whole, with reference to its effect upon the minds of the jurors and what they would understand it to mean.

4. **NEGLIGENCE: Unusual Noises: Frightening Animals: Instructions.** In an action for injuries caused by plaintiff's horse becoming frightened at the blowing of a whistle on a steam roller, an instruction that if defendant's servant in charge of the roller negligently blew the whistle, and plaintiff's horse, as a direct result of said steam whistle so negligently blown, became frightened and unmanageable and caused the injuries, and if the blowing of the whistle, if any, "was unnecessary in the performance of the work in which defendant was engaged," etc., the jury should find for plaintiff, was not vulnerable to the objection that it was misleading by reason of its use of the quoted words, since the instruction was complete without them and they merely required the jury to find more than was essential to a recovery by plaintiff.

8. ————: ————: ————: **Instructions.** In an action for injuries caused by plaintiff's horse becoming frightened at a steam roller, where the petition alleged that, after defendant's servant in charge of the roller knew that plaintiff's horse was being scared by the "unusual" puffing of the steam roller, he failed to stop it, an instruction that if the horse became frightened by the "usual" puffing and defendant thereafter failed to

Phelan v. Paving Co.

stop the roller, and that the continuation of such noises caused the horse to run away and injure plaintiff, then plaintiff was entitled to recover, was not vulnerable to the objection that it was erroneous because it did not conform to the petition, since defendant's liability on this theory did not turn upon the character of the noises and the allegation that the noises were "unusual" could be disregarded as surplusage.

9. ———: ———: ———: Instructions: Harmless Error. In an action for injuries caused by plaintiff's horse becoming frightened at a steam roller, an instruction directing a finding for plaintiff, if defendant's servant in charge of the steam roller, after seeing plaintiff's peril, failed to use ordinary care to stop the roller and the puffing noises incident to its operation, which caused the horse to become frightened, was not vulnerable to the objection that it was erroneous because it omitted to require the jury to find that defendant's servant could have stopped the noises in time to have prevented plaintiff's injury, since defendant's evidence, as well as plaintiff's, showed that the roller and the noises incident thereto could have been stopped instantly.

10. ———: ———: ———: Instructions: Harmless Error. In an action for injuries caused by plaintiff's horse becoming frightened at a steam roller, an instruction that, if it was apparent to defendant's servant in charge of the roller that plaintiff's horse was becoming unmanageable, then it was the duty of such servant to stop the roller and cease the noises, if the same could have been done by ordinary care, and if he failed to stop the noises and a continuation thereof caused the horse to run away, the finding should be for plaintiff, was not vulnerable to the objection that it was erroneous as making defendant liable if its servant failed to stop the noises, instead of requiring a finding that he failed to exercise ordinary care to that end, in view of the fact that other portions of the instruction charged that it was the duty of such servant to merely exercise ordinary care, and in view of the fact that the instruction required a finding that it was a continuation of the noises that caused the horse to run away and the evidence for both parties established that the noises could have been stopped instantly after the servant saw plaintiff's situation of peril.

11. INSTRUCTIONS: Assumption of Facts. An instruction is not to be condemned for assuming the existence of a fact, when the evidence for both parties tends to establish it.

Appeal from St. Louis City Circuit Court.—*Hon. William B. Homer*, Judge.

AFFIRMED.

*Percy Werner* for appellant.

(1) The demurrers to the evidence should have been sustained and the verdict is without substantial evidence to support it. First, on the theory. of negligent operation. The steam roller was lawfully on Laclede avenue and was a proper and necessary implement for the performance of defendant's contract with the city. Lane v. Lewiston, 91 Maine, 292; Cairncross v. Pewankee, 78 Wisc. 66, 71; Dist. of Columbia v. Moulton, 182 U. S. 576, 581. It was no part of the duty of the engineer of the steam roller to be on the lookout for frightened horses. Frye v. Railroad, 200 Mo. 377. The engineer had the right to assume that no person would drive his horse up to a steam roller in operation unless he had his horse under full control and was sure either that his horse would not take fright, or that, if he did, he could keep him under control. American Brewing Co. v. Talbot, 141 Mo. 674. A legal presumption obtains that every man performs his duties and engagements, social as well as official. This extends to a locomotive engineer who seeks to avoid striking a car on the track. Jewett v. Railroad, 50 Mo. App. 547; Agan v. Shannon, 103 Mo. 661; State ex rel. v. Bank, 120 Mo. 161; Mathias v. O'Neil, 94 Mo. 520, 526; State ex rel. v. Crumb, 157 Mo. 545; Monumental Bronze Co. v. Doty, 92 Mo. App. 5; Guest v. Railroad, 77 Mo. App. 258. Plaintiff, by unnecessarily taking the route which led through Laclede avenue, when other and perfectly safe and equally convenient routes were open to him and with knowledge that the work of reconstruction was going on, assumed the risk of all consequences which might result from the ordinary operation of the steam roller past which he attempted to drive. Craine v. Metropolitan St. Ry. Co., 246 Mo. 393. The danger from the appearance and noises of the roller filled the street and there was no escape from them except by not going on the street.

The noises were only the usual and ordinary noises incident to the operation of a steam roller. Having asked instruction number 2, plaintiff must be regarded as abandoning any other contention. Peak v. Taubman, 158 S. W. 656. Second, under the last chance doctrine. The engineer stopped the roller the instant he perceived plaintiff's danger. Hicks v. Railroad, 46 Mo. App. 304; Day v. Citizens Rig Co., 86 Mo. App. 471. It requires more than the showing of a mere possibility that the accident might have been avoided in order to bring the case within this doctrine. Markowitz v. Railroad, 186 Mo. 350. Where there is no element of wilfulness or wantonness, this doctrine has no application. Kellny v. Railroad, 101 Mo. 67; Rapp v. St. Louis Transit Co., 190 Mo. 144; Theobald v. St. Louis Transit Co., 191 Mo. 395; Deane v. St. Louis Transit Co., 192 Mo. 575; Clancy v. St. Louis Transit Co., 192 Mo. 615; Zumault v. Kansas City Suburban R. Co., 175 Mo. 288; Howerson v. St. Louis & Sub. R. Co., 157 Mo. 216. The burden is on the plaintiff to prove that the engineer saw not only that plaintiff was going into danger, but that he was unmindful of or oblivious to his real situation. Pennell v. Railroad, 153 Mo. App. 566. There is no room for the application of the last clear chance doctrine where plaintiff's opportunity of avoiding the injury was as late or later than that of the defendant. Indianapolis L. & T. Co. v. Croley, 96 N. E. 973. The testimony of the engineer as to when he first saw the peril of the plaintiff, if entirely reasonable, is conclusive. McGauley v. Transit Co., 179 Mo. 583; Riggs v. Railway, 216 Mo. 301. (2) Instruction number 1 is fatally erroneous. It practically told the jury that the whistle was in fact blown, and that its blowing was negligence, while ostensibly leaving these questions to the jury. It was misleading. (3) Instruction number 2 is fatally erroneous. In authorizing a verdict based on a finding of "the usual puffing noises," plaintiff did not follow the lines

of his petition which counts on "unusual puffing and frightening noises," and on "unusual and frightening noises." Phelan v. Paving Co., 227 Mo. 666, 714; Peak v. Taubman, 158 S. W. 656. It authorized a recovery if plaintiff's peril became apparent to the engineer, and he failed to stop the operation of the roller, irrespective of whether or not this became apparent to him in time to have saved him. And authorized a recovery if the engineer failed to stop the noises without regard to the question of ordinary care.

*Claud D. Hall* for respondent.

(1) The demurrer to the evidence was properly overruled. (a) It was prima-facie negligence for the engineer to discharge sudden puffs of steam and whistle as plaintiff approached, driving his horse. Feeney v. Railroad, 123 Mo. App. 428; Haller v. City of St. Louis, 176 Mo. 606; Brown v. Railroad, 39 Mo. App. 192; Stamm v. Railroad, 1 Abb. Cases, 438; Flynn v. Railroad, 169 Mass. 305; Rodgers v. Railroad, 150 Ind. 397; Railroad v. Barnett, 59 Pa. 259; Hanlon v. Phila. & West Chester Turnpike Road Co., 182 Pa. 115; Lightcap v. Phila. Traction Co., 60 Fed. 212; Bennett v. Lovell, 12 R. I. 167; Railroad v. Fulton, 39 S. 282; Class v. Railroad, 94 Ala. 581; 23 Am. & Eng. Enc., p. 744; Hickey v. Railroad, 82 Pac. 29; Powell v. Railroad, 82 Pacific 96. (b) It was the engineer's duty to stop the steam roller and the noise, when he saw or might have seen that plaintiff was being placed in a position of peril. Oates v. Metropolitan St. Ry. Co., 168 Mo. 535; Phelan v. Granite Bituminous Paving Co., 115 Mo. App. 423; Haller v. City of Et. Louis, 176 Mo. 606; Shinkle v. McCullough, 116 Ky. 960; Indiana Springs Co. v. Brown, 74 N. E. 617; Murphy v. Wait, 92 N. Y. Supp. 253; Ellis v. Railroad Co., 160 Mass. 350; Galesburg Electric Motor & Power Co. v. Manville, 61 Ill. App. 492; Benjamin v. Railroad, 160 Mass.

4; Hanlon v. Philadelphia & West Chester Turnpike Road Co., 182 Pa. 115; Brown v. Railroad, 89 Mo. App. 196; Hinzman v. Railroad, 182 Mo. 611; and 199 Mo. 56; Sites v. Knott, 197 Mo. 684; Dieter v. Zbaren, 81 Mo. App. 612; Abbott v. Railroad, 121 Mo. App. 582; Sapp v. Hunter, K. C. Ct., 134 Mo. App. 685; Cole v. Metropolitan St. Ry. Co., 121 Mo. App. 605. (c) Under the circumstances of this case the failure of defendant to stop the roller and noises was itself a wanton act, and the humane doctrine was applicable Cole v. Metropolitan St. Ry. Co., 121 Mo. App. 605; Drogmund v. Metropolitan St. Ry. Co., 122 Mo. App. 154; Beckenwald v. Metropolitan St. R. Co., 121 Mo. App. 595; Phelan v. Granite Bituminous Paving Co., 115 Mo. App. 423, 227 Mo. 666. (d) Plaintiff did not assume the risk of being injured, nor was he guilty of contributory negligence. His horse was gentle and he did not anticipate any danger. Oates v. Metropolitan Street Ry. Co., 168 Mo. 547; Feeney v. Railroad, 123 Mo. App. 420; Haller v. City of St. Louis, 176 Mo. 606; Phelan v. Granite Bituminous Paving Co., 227 Mo. 666. He was not compelled to take another street. Muncie Street Railway v. Maynard, 5 Ind. App. 372; Doran v. Cedar Rapids & Marion Ry. Co., 117 Iowa 442; Oates v. Metropolitan Street Ry. Co., 168 Mo. 535; Haller v. City of St. Louis, 176 Mo. 606; Ahlfeldt v. City of Mexico, 129 Mo. App. 193. But if plaintiff was negligent in taking Laclede avenue, it was the engineer's duty to stop the roller and the noise when he saw or could have seen plaintiff's position of peril. Moore v. Kansas City & C. I. Rapid Transit Co., 126 Mo. 277; Feeney v. Railroad, 123 Mo. App. 420-431; Oates v. Metropolitan St. Ry. Co., 168 Mo. 535; Hinzeman v. Mo. Pac. Ry. Co., 182 Mo. 611; Rapp v. St. Louis Transit Co., 190 Mo. 144, 161; Waddell v. Metropolitan St. Ry. Co., 113 Mo. App. 680; Wise v. St. Louis Transit Co., 198 Mo. 546; Phelan v. Paving Co, 227 Mo. 666. (2) Plaintiff's instruction number 1 was

proper. It was negligence to blow the whistle. Phelan v. Granite Bituminous Paving Company, 227 Mo. 666; Brown v. Railroad, 89 Mo. App. 192. It did not assume any facts in issue, but left them to the jury. Reisert v. Williams, 51 Mo. App. 13; Jaffi v. Railroad, 250 Mo. 450; Evers v. Wiggins Ferry Co., 127 Mo. App. 243. It was not misleading. Phelan v. Paving Co., 227 Mo. 666; Sapp v. Hunter, 134 Mo. App. 685. (3) Plaintiff's instruction number 2 was proper. It puts to the jury the question of defendant's negligence in continuing the usual noises of the roller, etc., after plaintiff's peril was apparent to defendant's engineer, which the petition was broad enough to cover. Phelan v. Granite Bituminous, 115 Mo. App. 434; 227 Mo. 666; Knight v. Donnelly, 131 Mo. App. 158; Lange v. Railroad, 208 Mo. 476; French v. Center Creek Powder Mfg. Co., 158 S. W. 723. It authorized a recovery only if the jury found it was apparent to defendant's engineer that plaintiff was being placed in peril and the engineer could have stopped or checked the noises, by the exercise of ordinary care, and the engineer failed to do so, and continued said noises, and plaintiff was injured as a result thereof. The use of the words, "in time" in said instruction was not essential, when it was implied from the language of the instruction. Phelan v. Granite Bituminous Paving Co., 227 Mo. 666; Potter v. Railroad, 136 Mo. App. 146; Williamson v. Railroad, 133 Mo. App. 380; Lange v. Railroad, 208 Mo. 458; Bunyan v. Railroad, 127 Mo. 12; Bell v. Railroad, 86 Mo. 506. The instruction did not ignore the question of ordinary care, but required the engineer to stop the noises after plaintiff's peril was apparent to him, if it could be done by the exercise of ordinary care. Potter v. Railroad, 136 Mo. App. 146; Rapp v. Transit Co., 190 Mo. 154; Gaut v. Railroad, 169 Mo. App. 607; Reisert v. Williams, 51 Mo. App. 16; Lange v. Railroad, 208 Mo. 458. The instruction should not be segregated into parts and a meaning given to the

segregated part which it would not have, if read with
all the other parts.  Evers v. Wiggins Ferry Co., 127
Mo. App. 236; Sapp v. Hunter, 134 Mo. App. 685; Kel-
ley v. Kansas City, 153 Mo. App. 484; Bunyan v. Rail-
way Co., 127 Mo. 12.

ALLEN, J.—This is a suit for personal injuries
alleged to have been sustained by plaintiff through the
negligence of defendant's servant.  The case has had
quite a career in the courts.  Plaintiff was injured
on October 3, 1904, and in the following year he ob-
tained a judgment in the circuit court of the city of
St. Louis.  Upon the defendant's appeal therefrom
to this court, the judgment was reversed and the cause
remanded for error appearing in an instruction.  [See
Phelan v. Granite Bituminous Paving Co., 115 Mo.
App. 423, 91 S. W. 440.]  Upon the second trial plain-
tiff again prevailed, and, the verdict and judgment
being for an amount then in excess of the pecuniary
jurisdiction of this court, defendant prosecuted an ap-
peal to the Supreme Court of this State, where the
judgment was again reversed and the cause remanded
because of an erroneous instruction.  [See Phelan v.
Paving Co., 227 Mo. 666, 127 S. W. 318.]  Upon the
third and last trial there was again a verdict and judg-
ment for plaintiff, and the defendant appealed to this
court.  When the case, upon this last appeal, was
reached upon our docket, we transferred it to the Su-
preme Court upon the authority of Curtis v. Sexton,
252 Mo. 221, 159 S. W. 512; but it was thereafter re-
transferred here, the Supreme Court having in the
meantime held in Rourke v. Holmes Street Railway
Company et al., 257 Mo. 555, 166 S. W. 272, that pro-
vision of the statute under consideration in Curtis v.
Sexton, supra, to be unconstitutional.

Upon the occasion in question, plaintiff was driv-
ing a laundry wagon west along the north side of La-
clede avenue, a public street in the city of St. Louis,

extending east and west, and was in the block between Grand avenue on the east and Spring avenue on the west; the two last mentioned streets intersecting La- clede avenue at right angles. Defendant company was engaged at the time in reconstructing said Laclede avenue by laying a concrete foundation surfaced with bituminous macadam. The center of the street was occupied by street railway tracks; and that portion of the street north of such tracks had been reconstructed and was open for traffic, the defendant being then en- gaged in reconstructing the south side thereof. In the work of finishing the surfacing of the street, the de- fendant was operating a steam roller thereon. On the north side, near the curb, was a pile of crushed granite placed there by defendant for use in its work of re- construction, and near this was standing a small hand cart used for sprinkling gravel. As plaintiff ap- proached and attempted to pass the steam roller, his horse took fright, got beyond his control and ran away, the wagon striking the hand cart, the pile of granite and the street curb, whereby plaintiff was hurled to the street and injured.

No material changes have been made in the plead- ings since the case was in the Supreme Court. [See Phelan v. Paving Co., 227 Mo. l. c. 678, 679, 127 S. W. 318.] The petition contains two distinct assignments of negligence. One is that while plaintiff was driving on the public street aforesaid, the defendant "so care- lessly, negligently and recklessly managed and con- ducted a steam roller that the same scared" plaintiff's horse, causing it to run away. This assignment of negligence charges that the frightening of plaintiff's horse in the first instance, was due to the negligent operation of the steam roller.

The second charge of negligence is that the de- fendant's servant in charge of and operating the steam roller "knew and saw, or by the exercise of reason- able care could have known and seen, that the plain-

tiff's horse was being scared by the running and un-
usual puffing and frightening noises of the steam street
roller, and that plaintiff's horse was about to run
away, and that plaintiff was being placed in a position
of peril, in time for the defendant's said agents and
servants to stop or check the running of said steam
street roller and check its unusual puffiing and fright-
ening noises, and thereby prevent the plaintiff's horse
from frightening and running away, and the injuries to
the plaintiff.  But that defendant's said agents and
servants in charge of said street roller did, neverthe-
less, carelessly, negligently and recklessly run and op-
erate said street roller with unusual and frightening
noises and with unusual speed, whereby plaintiff's
horse was scared and ran away and plaintiff was in-
jured, as aforesaid.''

The answer—denying generally, and pleading mat-
ter by way of affirmative defense—was, as said by ap-
pellant's counsel in his brief, the same as that in the
record before the Supreme Court except as to one par-
agraph ''which was somewhat different in  form,
though in effect the same as the corresponding para-
graph in the former answer,'' charging plaintiff with
the violation of a city ordinance.

Plaintiff, in describing the accident, said: ''When
I got there this engine, this roller, was practically dead.
It had not moved. . . .  When I got within forty or
fifty feet of the engine it suddenly puffed and blowed
its whistle. I had heard noise from the engine before,
but I had never heard any as loud as these were on
this particular morning. The noises were the puffing
and the blowing of the whistle. It started so sudden
that the horse, when I was within, I guess about forty
feet, he commenced to rear up in the air and plunge,
and I tried to control him, and before I could get him
controlled he run into this screening cart, . . . and
my wagon upset and threw me out. I should judge the
noise continued two or three minutes, the puffing and

blowing off of the whistle. It was a whistle like would be on an engine—a railroad engine. It was a steam whistle. It was a whistle that had a little kind of a ball at the bottom of it, that when the whistle blows you pull a lever, a little lever connected with that that blows the whistle. The noise it made was shrill, very loud— louder than a locomotive or other steam whistle; it was more shrill than I had ever heard. I think that the whistling continued at least about two minutes; and during that time I was trying to control my horse, pulling the lines and hollering at him. I had the lines in my hand. I think the puffing continued at least two or three minutes. The puffing noise was very rapid, all in an instant. I had never heard a noise like that before. . . . My horse ran after it became scared at the engine, I should judge about thirty or forty feet, something like that. It ran about fifteen feet before it struck the gravel cart or the pile of screenings on the north curb; fifteen feet from where my horse started. After striking that object he ran about thirty or forty feet, something like that."

I.   One assignment of error pertains to the over-ruling of appellant's demurrer to the evidence inter-posed below; but in considering this, it is unnecessary for us to rehearse in detail the evidence adduced upon this last trial. The testimony contained in the record on the appeal to the Supreme Court is fully reviewed in the opinion of that court by Lamm, J., above re-ferred to, and that contained in the record before us does not differ materially therefrom, so far as con-cerns the ruling upon the demurrer.

On behalf of plaintiff there was testimony of other witnesses corroborating that given by him, to the effect that the steam roller in question was equipped with a whistle, and that a shrill blast thereof was blown as plaintiff approached the steam roller. On the other hand, defendant's evidence is to the effect that

the roller was in fact equipped with no whistle, and that none was blown on the occasion in question.

Upon this phase of the case the evidence was highly conflicting, and it was therefore the peculiar province of the jury to resolve the conflict therein, and to say whether or not there was a steam whistle upon this roller, and whether or not a shrill and protracted blast thereof was sounded as plaintiff approached the same. So far as concerns this first assignment of negligence, we may omit all reference to the puffing noises said to have been made by the engine, and in passing upon the court's ruling upon the demurrer confine ourselves to the question of defendant's negligence with respect to the blowing of the whistle. ·

In fact, upon this last trial, plaintiff submitted his case, under the first assignment of negligence in his petition, upon the theory alone that defendant's engineer was negligent in blowing the whistle, under the circumstances. Touching this question it was said by LAMM, J., in the opinion of the Supreme Court in this case:

"There is no evidence and no claim that the use of a steam whistle, as such, was necessary in running the roller at the time. If one was used, its use was negligent. That the unnecessary use of a steam whistle close to travelers on a highway whereby horses are frightened and human beings injured is actionable negligence is a proposition supported by principles of natural justice and by precedent. [Feeney v. Railroad, 123 Mo. App. l. c. 429, 99 S. W. 477; Brown v. Railroad, 89 Mo. App. 192, and authorities cited; Flynn v. Railroad, 169 Mass. 305.] The demurrer should have been overruled on this ground, if no other."

In this connection, it may be said that, though defendant's evidence went to show that the roller was not equipped with a steam whistle, and that none was sounded, and to make it appear that plaintiff's witnesses mistook the noise made by escaping steam, in-

cident to the ordinary operation of the roller, for the blowing of a whistle, it is pointed out that a witness for plaintiff testified that the only use for a steam whistle upon such a roller was as a signal to employees to begin or to quit work, and that plaintiff's evidence shows that the accident happened early in the morning, about the time defendant's employees were beginning work for the day. But as to this we need only say that if, from the more or less indefinite statements of plaintiff's witnesses as to the exact time of the accident, any inference could be drawn that the whistle was blown, if at all, as a signal to begin work, defendant's evidence sets this matter at rest; for a witness for defendant, who was in charge of the reconstruction work in question, said: "This roller had been running to my knowledge at least twenty minutes continually before the accident occurred." It thus appears that, according to defendant's evidence, the whistle could not have been blown as a signal to begin work, and if one was blown, it was, under the facts and circumstances appearing, a negligent act. Indeed this is settled by the opinion of the Supreme Court, which, of course, is the law of this case.

We therefore need not stop to dwell further upon this assignment of error. Other questions are treated of in the brief of counsel for appellant, in this connection, and were here argued, but they have been effectually disposed of by the opinion of the Supreme Court herein, so far as concerns the demurrer to the evidence, and no useful purpose would be served by discussing them.

II. The remaining assignments of error pertain to the giving of two instructions on behalf of plaintiff. One of these, predicated upon the first assignment of negligence in the petition, is as follows:

"1. The court instructs you, that if you find from the evidence that, while plaintiff was driving a one-

horse wagon at the place on Laclede avenue, mentioned
in the evidence, and that the agent of the defendant
in charge of a certain steam street roller, mentioned in
the evidence, negligently blew a steam whistle on said
steam street roller, and that the horse of the plaintiff,
as a direct result of the blowing of said steam whistle
*so negligently blown* on said steam street roller, be-
came frightened and unmanageable and ran away, and
caused the injuries to plaintiff complained of; and if
you further find that the said blowing of said steam
whistle, if any, was unnecessary in the performance
of the work of finishing the surface on Laclede avenue
in which the defendant was engaged at the time, then
your verdict should be for the plaintiff, unless you fur-
ther find from the evidence that there was negligence
on plaintiff's part directly contributing to the injuries
sustained by him.''

This instruction is assailed upon the ground that
by the use of the words, ''so negligently blown,'' which
we have above italicized, the instruction assumes both
that the whistle was blown, and that its blowing was
negligent. So far as the latter is concerned, i. e.,
whether or not the blowing of the whistle, if any, was
negligence, this question is disposed of by what we
said above. And the only question in this immediate
connection is whether the instruction can be said to
assume that the whistle was blown. But we are not
persuaded that the instruction, when taken as a whole,
can be said to assume this as a fact. The instruc-
tion, at the outset, requires the jury to find that the
defendant's agent ''negligently blew a steam whistle,''
and that plaintiff's horse as a result of the blowing
thereof became frightened, etc. The words ''so neg-
ligently blown'' are so closely connected with the ear-
lier part of the instruction that the jury must have
understood that the controverted question of fact as
to whether or not the whistle was blown was left to

their determination. Also the subsequent language of the instruction, to-wit: ''And if you find that the blowing of said steam whistle, *if any,* was unnecessary,'' etc., makes it clear that the instruction does not assume that the whistle was blown.

This instruction follows the language of Judge LAMM's opinion in this case in the Supreme Court, where it is said:

''Plaintiff was entitled to an instruction properly drawn to the effect, that if the jury found and believed from the evidence, that defendant negligently blew a steam whistle in its work in reconstructing Laclede avenue, and that said steam whistle, so negligently blown, frightened plaintiff's horse and caused him to run away, etc., then the plaintiff could recover in the absence of contributory negligence.''

It is quite true, as counsel for appellant says, that the court was not then formulating an instruction; and it does not follow that an instruction would be proper couched in the identical language used in the opinion. However, it should be viewed as a whole, with reference to its effect upon the minds of the jurors and what the latter would understand it to mean. Thus taking it, we cannot believe that men of sufficient intelligence to be qualified to serve on a jury could, by the use of the words in question, be misled into the belief that they were to regard the blowing of the whistle as an established fact in the case, and which they were not required to pass upon. We think that no reversible error inheres in the instruction on this score.

The other point made against this instruction is that the jury are required to find, ''that the said blowing of said steam whistle, if any, was unnecessary in the performance of the work of finishing the surfacing on Laclede avenue in which defendant was engaged at the time.''    It is said that the instruction is complete without this, and that the addition of this clause made the instruction misleading. But we are unable

to 'appreciate the force of this argument, particularly in view of the fact, as said by the Supreme Court in this case, that the blowing of a whistle, at the particular time, appears to have been unnecessary for any purpose, and therefore the jury were merely required to find more than was essential to plaintiff's recovery. In this the plaintiff assumed an unnecessary burden, but we do not see that the instruction is thereby rendered misleading.

Upon the whole we think that there was no reversible error in the giving of this instruction.

III. Plaintiff's other instruction complained of is predicated upon the second assignment of negligence in the petition, and is as follows:

"2. The court further instructs you that, if you find from the evidence that the defendant was operating a steam street roller so that it made the usual puffing noises made by it when in operation, and such noises caused the plaintiff's horse to shy and act as if becoming unmanageable to such an extent that plaintiff was being placed in a position of peril, and if you find that it was apparent to the defendant's engineer in charge of said steam street roller that plaintiff's horse was becoming unmanageable and was placing plaintiff in peril, then it was the duty of the defendant's engineer to stop the roller and cease the noises if the same could be done by the exercise of ordinary care on his part, and if you find that the defendant's engineer failed to stop said noises, and that the continuation of such noises put plaintiff's horse in a panic and caused plaintiff's horse to run away and as a result thereof the plaintiff was injured, then you will find in favor of the plaintiff, unless you further find that the plaintiff was guilty of negligence directly contributing to his injuries."

One attack upon this instruction is that plaintiff abandoned his charge contained in the petition that

the horse was frightened by *unusual noises*. And it is said that though plaintiff alleges that defendant's servant "knew and saw, or by the exercise of reasonable care could have known and seen that plaintiff's horse was being scared by the running and unusual puffing and frightening noises of the steam roller," this instruction makes the defendant liable although the noises made thereby were only such as ordinarily attended its operation; and that thereby a new and different cause of action was substituted for that pleaded in the petition.

And in this connection it is pointed out that, in the opinion of the Supreme Court in this case, it was said of plaintiff's first instruction then appearing in the record, that "in omitting that phase, (i. e. that of unusual and extraordinary noises) plaintiff did not follow the lines of his petition which counts on 'unusual puffing and frightening noises' and on 'unusual and frightening noises.' " But this was said of the instruction then under consideration with reference only to the portion thereof which dealt with the first assignment of negligence contained in plaintiff's petition, but which (unlike plaintiff's first instruction in this record) predicated liabiltiy upon *"puffing* or whistling noises." The court's language had to do altogether with the question of defendant's liability for the alleged frightening of plaintiff's horse in the first instance, and not for the failure of defendant's servant to discontinue the noises after plaintiff's peril became apparent to him. On the first assignment of negligence in the petition, alone, an instruction would be erroneous which required the jury to find nothing more than that the steam roller in question was making only the noises usually and ordinarily incident to its operation. But it does not follow by any means that this would be true of the second charge of negligence contained in the petition. The latter is based upon the alleged negligence of defendant's servant in

failing to stop the noises after seeing the peril in which plaintiff was being placed thereby. It is true that plaintiff in his petition has alleged more than was necessary, in pleading this assignment of negligence; for in order to hold the defendant liable for the failure of its engineer to discontinue the noises, it was not necessary to plead that they were unusual. But this does not prevent a recovery as for a negligent failure to stop the noises, though they were such as were usually incident to the operation of the roller; for the question of liability does not then turn upon the character of the noises, as being usual or unusual. This whole question is thoroughly disposed of by the opinion of the Supreme Court in this case. As to this the court said:

"Again, on the hypothesis the noises were usual. There was testimony that, after the horse gave signs of taking fright at the noises made by the approaching roller, these same noises were continued until he became unmanageable and the catastrophe resulted. If, now, defendant's engineer saw the initial signs of fright and uneasiness in the horse and, giving no heed to them, continued the original cause of the fright until the horse broke entirely away from control, i. e. if the runaway was caused by such *continuation* of the noises, then defendant was liable though the continued noises were usual. The case in this aspect is the same as if one is in peril and another, seeing his peril, omits to save him when within his power. It is but the humanitarian rule in one of its forms. (Oates v. Railroad, 168 Mo. 535; O'Donnell v. O'Neill, 130 Mo. App. 360.)" [See Phelan v. Paving Co., supra, l. c. 710.]

And again, though the instruction then under scrutiny was criticized because it was "so drawn that the jury might be misled into the idea that if the horse became unmanageable at the outset from the puffing

(though ordinary and necessary) the defendant was in some way blamable,'' nevertheless the court said:

"He (plaintiff) was also entitled to an instruction to the effect that if defendant was operating its steam roller with usual puffing noises and such noises caused plaintiff's horse to shy and to act as if becoming unmanageable, if the noises of the approaching roller be continued, and if such fact became apparent to defendant's engineer, then it was his duty to stop the roller and cease the noises; and if thereafter in violation of that duty he did not stop the roller and cease the noises but continued them and such *continuation* of said noises put plaintiff's horse into a panic and caused it to run away, then, in the absence of his contributory negligence, plaintiff was entitled to recover.''

It is quite clear that appellant's position as to this phase of the instruction is not tenable.

The instruction is also assailed, in that it omitted to require the jury to find that the defendant's engineer could have stopped the noises in time to prevent plaintiff's injury; that the instruction is based upon the so-called humanitarian doctrine, and that, absent the element of time, there is no room for the application thereof; and furthermore that plaintiff charges in his petition that defendant's engineer could, by the exercise of ordinary care, have stopped the noises in time to have prevented plaintiff's injuries, and hence the jury must be required to so find.

As to this we need only say that whatever may be true as a general rule with respect to an instruction of this character, where the humanitarian rule is involved, the facts of this case are such as to render harmless any error in the instruction on this score, if error there be. This is for the reason that not only plaintiff's evidence, but that of defendant, shows that the operation of the roller, and the noises incident thereto, could have been stopped "instantly." Indeed defendant's

engineer maintains that he did stop the same "instantly" upon discovering plaintiff's peril; though plaintiff's evidence is to the effect that he failed to do so, but permitted the noises to continue for some considerable time thereafter, during which time he saw and knew that plaintiff's horse was being frightened thereby, was becoming unmanageable, and that plaintiff was thereby placed in a position of peril. There was therefore no question left open as to the time within which defendant's servant could have stopped the noises, had he undertaken to do so.

Further attack upon this instruction is that it did not require the jury to find that the engineer failed to exercise ordinary care to stop the roller, but made the defendant liable if the jury found merely that the engineer "failed to stop the noises." But an examination of the instruction will show that it told the jury that "it was the duty of the defendant's engineer to stop the roller and cease the noises, if the same could be done by the exercise of ordinary care on his part." And it seems that this portion of the instruction may be said to have supplied the element in question, so that, taking the instruction as a whole, the giving of it in this form would not constitute reversible error. [See Garard v. Coal & Coke Co., 207 Mo. 242, 105 S. W. 767; Bradley v. Railroad, 138 Mo. 293, 39 S. W. 763; Pendegrass v. Railroad, 162 S. W. 712; Crader v. Railroad, 164 S. W. 678.]

But aside from this, the instruction required the jury not only to find "that the defendant's engineer failed to stop said noises," but "that the *continuation* of such noises put plaintiff's horse in a panic and caused plaintiff's horse to run away," etc. And it appears that there was no question involved as to whether the engineer could or could not have promptly stopped the noises by the exercise of ordinary care, but that he could have readily stopped them at once. If it was the continuation of the noises that caused

plaintiff's horse to run away, and the consequent injuries to plaintiff, as the jury were at liberty to find, and if defendant's engineer could have immediately discontinued such noises after seeing plaintiff's position of peril, and failed to do so, we think that there can be no question as to defendant's liability; and that it could not be reversible error to instruct the jury accordingly. [See Phelan v. Paving Co., 227 Mo. l. c. 710, 127 S. W. 318.]

We have carefully considered all of the grounds for reversal urged upon us by learned counsel for appellant. Many of the questions raised are concluded by the decision of the Supreme Court in this case on the former appeal, making it unnecessary for us to touch upon them; and the other points made are, we think, without substance. Appellant's counsel lays some stress upon the fact that the Supreme Court's decision, to which we have so frequently referred above, was by a divided court, as will appear by reference thereto from which the views of the different members of the court may be ascertained. But so far as we are concerned, this is not a matter of moment, for the decision of the majority of that court is the law of this case, in so far at least as it is pertinent to the case as now presented by this record.

For the reasons given above, the judgment of the circuit court should be affirmed, and it is so ordered. *Reynolds, P. J.,* and *Nortoni, J.,* concur.